MICHAEL J. GABLEMAN, J.
¶ 1. This is a review of an unpublished decision of the court of appeals,[1] which reversed the Jefferson County Circuit Court's[2] order denying Richard Sulla's ("Sulla") post-conviction motion to withdraw his no contest pleas.
¶ 2. This case requires us to examine the circumstances under which a circuit court may deny a defendant's postconviction motion for plea withdrawal without holding an evidentiary hearing. Specifically, we consider whether a circuit court may, without holding an evidentiary hearing, deny a defendant's motion to withdraw his plea when the defendant alleges that his plea was not knowing, intelligent, and voluntary because he did not understand the effect a read-in charge could have at sentencing.
¶ 3. The State brought four charges against Sulla in Jefferson County relating to two burglaries and an arson. Sulla and the State entered into a plea agreement, under which Sulla would plead no contest to Counts 1 and 3, while Counts 2 and 4 would be dismissed and read into the record for purposes of *231 sentencing and restitution.[3] Prior to entering his plea, Sulla read and signed a Plea Questionnaire/Waiver of Rights form, and the circuit court held a plea hearing.[4] At the plea hearing, the court concluded that Sulla's pleas were made in a knowing, intelligent, and voluntary fashion, and it ordered judgments of guilt be entered accordingly. The court then held a sentencing hearing and, after extensive discussion, sentenced Sulla to 15 years imprisonment, consisting of 7.5 years of initial confinement and 7.5 years of extended supervision for Count 1, and 5 years imprisonment, consisting of 2.5 years of initial confinement and 1.5 years of extended supervision for Count 3. The court ordered the sentences to run consecutively to one another and to all other sentences.
¶ 4. Sulla filed a motion for postconviction relief, seeking to withdraw his no contest pleas on the basis that his pleas were not made in a knowing, intelligent, and voluntary fashion. Sulla claimed that his pleas were unknowing because he "did not understand that for purposes of the read-in charge, he would effectively be considered to have committed the offense." To *232 support his motion, Sulla filed an affidavit, which stated, in pertinent part," [M]y attorney [] told me that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would 'look at' at sentencing. I did not understand and my Attorney did not explain the effect that a read-in offense has . . . In short, Sulla claimed that he was misinformed by his attorney and that because he was misinformed, he did not understand the effect the read-in charges would have at sentencing.
¶ 5. The postconviction court denied Sulla's motion to withdraw his plea without first holding an evidentiary hearing. The court concluded that Sulla was not entitled to an evidentiary hearing on his motion because his affidavit failed to allege sufficient facts which, if true, would entitle Sulla to relief. In addition, the postconviction court found that Sulla was not entitled to an evidentiary hearing because the record conclusively demonstrated that Sulla was not entitled to relief. The court of appeals reversed, concluding that Sulla's motion did allege sufficient facts and further concluding that Sulla was entitled to an evidentiary hearing because the record did not conclusively demonstrate that Sulla understood the effect of the read-in charges at sentencing. The State appealed.
¶ 6. The issue before us is whether the postcon-viction court was required to hold an evidentiary hearing before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. To address this issue, we apply the test set forth in Nelson v. State, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and refined in State v. Bentley, 201 Wis. 2d 303, 548 N.W.2d 50 (1996) (hereinafter "Nelson/Bentley"). Nelson/Bentley instructs that "if a motion to withdraw a guilty plea after judgment and *233 sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing." State v. Bentley, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996) (quoting Nelson v. State, 54 Wis. 2d 489, 497-98, 195 N.W.2d 629 (1972). However, "if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing." Id. at 310 (quoting Nelson, 54 Wis. 2d at 497-98).
¶ 7. We conclude that the postconviction court was not required to hold an evidentiary hearing before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. Here, the postconviction court properly exercised its discretion when it denied Sulla's postconviction motion to withdraw his plea without first holding an evidentiary hearing because it applied the proper legal standard, examined the relevant facts, and engaged in a rational decision making process. Moreover, when we apply the Nelson/Bentley test to this case, we conclude that Sulla is not entitled to an evidentiary hearing on his postconviction motion to withdraw his plea. The record in this case, specifically the Plea Questionnaire/Waiver of Rights form and the transcripts from the plea hearing and the sentencing hearing, conclusively demonstrates that Sulla is not entitled to relief because he was correctly informed of and understood the effect of the read-in charges at sentencing.[5]
*234 I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
A. Charging and Plea Bargaining
¶ 8. On July 26, 2011, the State charged Sulla with two counts of burglary, one count of conspiracy to commit arson, and one count of party to the crime of operating a motor vehicle without the owner's consent, all as a repeat offender. Sulla, if convicted of each count, would have faced a maximum period of imprisonment of 95 years and 6 months.[6] Despite initially pleading not guilty on all four counts, Sulla later entered into a plea deal with the State. In exchange for pleading no contest to Count 1 (armed burglary) and Count 3 (burglary), the State agreed to dismiss but have read into the record Count 2 (arson) and Count 4 (operating motor vehicle without consent). Sulla's plea deal decreased his maximum period of imprisonment to 39 years and 6 months.
*235 ¶ 9. Prior to entering his plea, Sulla read and signed a Plea Questionnaire/Waiver of Rights form. A list of "Understandings" on the form included a statement addressing read-in charges:
I understand that if any charges are read-in as part of a plea agreement they have the following effects:
• Sentencing — although the judge may consider read-in charges when imposing sentence, the maximum penalty will not be increased.
• Restitution — I may be required to pay restitution on any read-in charges.
• Future prosecution — the State may not prosecute me for any read-in charges.
Sulla signed the Plea Questionnaire/Waiver of Rights form, acknowledging, "I have reviewed and understand this entire document and any attachments. I have reviewed it with my attorney.... I have answered all questions truthfully and either I or my attorney have checked the boxes. I am asking the court to accept my plea and find me guilty." Sulla's attorney also signed the Plea Questionnaire/Waiver of Rights form, acknowledging, "I am the attorney for the defendant. I have discussed this document and any attachments with the defendant. I believe the defendant understands it and the plea agreement. The defendant is making this plea freely, voluntarily, and intelligently. I saw the defendant sign and date this document."
B. Plea Hearing
¶ 10. On April 10, 2012, the circuit court held a plea hearing. At the plea hearing, the court specifically discussed read-in charges — and their effect at sentencing — with Sulla:
*236 THE COURT: Mr. Sulla, I understand that of the four ■ counts made against you, you intend to withdraw your not guilty pleas and instead plead no contest to crimes in Counts 1 and 3 called armed burglary and burglary both as habitual criminals. Is that right?
SULLA: Yes, ma'am.
THE COURT: And then you expect that both sides will ask me to dismiss Counts 2 and 4, conspiracy to commit arson and operating motor vehicle without owner's consent, again both as habitual criminal, but have me consider those offenses when I sentence you, also true?
SULLA: Yes, ma'am.
(Emphasis added.) As part of the plea hearing, the circuit court also confirmed that Sulla had an opportunity to discuss his plea with his attorney:
THE COURT: So Mr. Sulla, have I correctly stated the representation that the State's attorney has made to you regarding the State's recommendations?
SULLA: Yes, ma'am.
THE COURT: Have you had enough time with Mr. De La Rosa?[7]
SULLA: Yes, ma'am.
THE COURT: He's told you and you've — you understand from him that I don't have to follow that recommendation or your recommendation or anyone's recommendations in these cases, don't you?
SULLA: Yes, ma'am.
*237 In addition, the court warned Sulla that regardless of the recommendation made by the State, the court could award the maximum statutory sentence:
THE COURT: In fact, on Count 1, I could order imprisonment up to 21 years and up to $50,000 in fines and on Count 3, I could order imprisonment up to 18 1/2 years and up to $25,000 in fines, so regardless of the recommendations, my authority is to — for a total of 39 1/2 years imprisonment and $75,000 in fines; do you understand my sentencing authority?
SULLA: Yes, ma'am.
Finally, the court confirmed that Sulla read, understood, and signed the Plea Questionnaire/Waiver of Rights form:
THE COURT: I was reading in part from a yellow document called plea questionnaire and waiver of rights and I see Mr. De La Rosa's signature on it from this morning. I recognize it. Did you also sign it this morning?
SULLA: Yes, ma'am.
THE COURT: Before you did, did you read and understand it?
SULLA: Yes, ma'am.
THE COURT: There is another document that you and Mr. De La Rosa filed with it and it is called a felony element of criminal offenses. Did you read it before you signed this yellow document?
SULLA: Yes, ma'am.
THE COURT: Did you understand everything in both papers?
SULLA: Yes, ma'am.
*238 After finishing the plea colloquy, the court found that Sulla's pleas were made in a knowing, intelligent, and voluntary fashion. Specifically, the court stated,
These pleas are knowing, voluntary, and intelligent. They and the dismissed charges are sufficiently supported by fact. I accept the pleas, find the defendant to be a habitual criminal. Find him guilty as he's charged in Counts 1 and 3 and on the request of both parties and for the reasons provided by the district attorney, dismiss Counts 2 and 4. I'll consider them at sentencing. I order that judgment enter.
(Emphasis added.) The case then proceeded to sentencing.
C. Sentencing Hearing
f 11. The circuit court held a sentencing hearing on May 15, 2012. At the sentencing hearing, the court explained the effect that the read-in arson charge would have on its sentencing determination for Count 1:
I want to say two things. One is, you asked me to dismiss it and consider it as a read-in. So I'm going to. I'm not going to consider that you are uninvolved with it. You gave me a victim — you gave me a plea questionnaire that says thatyow understand that if charges are read in as part of the plea agreement they have the following effect; at sentencing, the judge may consider read-in charges when imposing sentence, but the maximum penalty will not be increased and that you might be required to pay restitution for read-in charges and that the State can'tprosecute you separately for it in the future.
The second consideration I have of the arson is that, let's say for argument purposes that you were in Michigan at the time of the arson, that you were non-participatory in the torching altogether. As far as *239 I can tell from your statement, the arson followed the burglary that you were involved with. And so it followed that felony.
(Emphasis added.)
¶ 12. After discussing several other sentencing factors,[8] such as Sulla's age, his 18 previous convictions, and the nature of his crime, the court sentenced Sulla to a total of 20 years, which is nearly half the maximum period of imprisonment (39 years and 6 months).[9] On Count 1, Sulla received 15 years imprisonment, consisting of 7.5 years of initial confinement and 7.5 years of extended supervision. On Count 3, Sulla received 5 years imprisonment, consisting of 2.5 years of initial confinement and 1.5 years of extended supervision. The court ordered the sentences to run consecutively to one another and to all other sentences.
D. Postconviction Motion and Hearing
¶ 13. On August 5, 2013, Sulla filed a motion to withdraw his plea[10] on the basis that his plea was not knowing, intelligent, and voluntary because he did not *240 understand the effect a read-in charge could have at sentencing.[11] To support his motion, Sulla submitted an affidavit, which stated, in pertinent part,
[M]y Attorney De La Rosa told me that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would "look at" at sentencing. I did not understand and my Attorney did not explain the effect that a read-in offense has because Attorney De La Rosa did not explain it to me. In fact, I did not commit the arson and if I had known that it was going to be considered as a negative at my sentencing I would not have entered the no contest plea.
¶ 14. On September 6, 2013, the court held a postconviction motion hearing. Ultimately the court, without holding an evidentiary hearing, denied Sulla's motion to withdraw his plea. Applying the two-part test set forth in Nelson ! Bentley, the postconviction court concluded that Sulla was not entitled to an evidentiary hearing on his motion for plea withdrawal because (1) Sulla's motion failed to alleged sufficient facts which, if true, would have entitled Sulla to relief and (2) even if Sulla's motion had alleged sufficient facts, the record conclusively demonstrated that Sulla was not entitled to relief because he was correctly informed of and thus understood the effect of the read-in charges at sentencing.
¶ 15. Regarding the first prong of Nelson / Bentley, the postconviction court reasoned,
Counsel was not deficient in his performance, vis-a-vis the need to sufficiently advise/appraise the defendant of the import of the arson read-in. Even if you consider *241 the affidavit of the defendant, he claims that counsel told him he "was not admitting guilt and that it [the arson] was just something the court would 'look at' at sentencing." Those are accurate statements of the law. The court would not find him guilty of the arson for purposes of exposure to a sentence on that offense and "look at" is another way to describe "consider". This court finds the allegation does not even rise to the level of deficiency.
(Alterations in original.) Regarding the second prong of Nelson / Bentley, the postconviction court explained,
Before the court even undertook a colloquy with the defendant, the defendant's counsel went through two documents with him .... The first is the Modified Criminal Case Settlement form.... That document bears the signature of both the defendant and counsel. That exhibit clearly notes that the defendant would be responsible for restitution in the two amounts listed, which total $462,070.00. This document alone completely undercuts the claim that he did not know that the court would consider he committed the arson; otherwise how do you get to that amount of restitution without being held responsible for the arson? You can't. . ..
The court additionally finds that.. . the Plea Questionnaire/Waiver of Rights form has a section on the back side entitled, "Understandings". The second to last bullet in that box gives a legally proper and sufficient explanation of how read-in offenses will be considered by the sentencing court. Even the defendant does not allege that they are deficient in any way and the court finds and concludes that they are not (see the Wisconsin Judicial Benchbook-Page 43-7, 2013 version and State v. Frey ¶ 62-77). Nor does the defendant allege that he did not sign the waiver of rights form with his attorney.... The defendant's signature lies beneath a segment of language entitled, *242 "Defendant's Statement" which reads in pertinent part that he has "reviewed and understand[s] this entire document" which obviously would include the section and bullet described above. But the record and this court's findings in this regard do not stop there.
At the plea hearing, the transcript reveals . .. that the defendant did understand the court could consider his culpability as to the arson in crafting [his] sentence under his pleas to count one and three. Plea hearing TR. P.3 1.4-10; p.41.6-8 as well as 1.22-25; p.5 1.1 — 5 as well as 1.11 — 13; p.7 1.7-9; and p.10 1.5-8. Those references clearly and conclusively demonstrate that the court's colloquy with the defendant established that he knew that [the sentencing court] would consider [the read-ins] ....
¶ 16. Throughout its analysis, the court highlighted several specific facts: (1) Sulla agreed to have the arson charge read into the record, (2) the read-in charge allowed Sulla to avoid significant prison exposure from the arson charge, (3) Sulla signed the Plea Questionnaire/Waiver of Rights form, which explicitly informed Sulla that the court could consider the read-in charges for purposes of sentencing and restitution, and (4) the court at the plea hearing asked Sulla if he understood that the read-in charges would be dismissed but read into the record for consideration at sentencing, and Sulla said he understood. Further, the postconviction court noted that under this court's precedent, the sentencing court could have considered the conduct underlying the arson charge even if the charge had been dismissed or if Sulla had been acquitted of the charge:
[T]he sentencing court could, in an exercise of discretion[,] consider[] [that] he "committed" the arson offense under the rubric of "character of the accused" *243 even if the state dismissed the count outright or if he had a trial, and the jury acquitted him of the count of arson. Either of those scenarios would put him in exactly the same position he found himself at the original sentencing, in terms of the court's view of his behavior.
¶ 17. Relying on all of the information outlined above, the court concluded that Sulla understood that the read-in charges would be dismissed but read into the record for purposes of sentencing and restitution. As a result, the court dismissed Sulla's postconviction motion to withdraw his plea without holding an evi-dentiary hearing. Sulla appealed.
E. The Court of Appeals' Decision
¶ 18. The court of appeals reversed and remanded, concluding that Sulla was entitled to an evidentiary hearing to determine whether his pleas were knowing, intelligent, and voluntary. The court of appeals was sympathetic to Sulla's claim that he did not understand the effect of a read-in charge, remarking, "It is not inherently implausible that a defendant would misunderstand the read-in concept. The concept is not intuitively obvious to non-lawyers." State v. Sulla, No.2013AP2316-CR, unpublished slip op., ¶ 12 (Wis. Ct. App. May 21, 2015) (per curiam).
¶ 19. Utilizing Nelson ¡Bentley, the court of appeals first concluded that Sulla's affidavit made a sufficient factual allegation that he did not understand the concept of a read-in charge. Id., ¶¶ 12-15. The court commented,
Sulla's allegation that his attorney told him "that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court *244 would 'look at' at sentencing" is sufficient to allege why Sulla may not have understood the read-in concept. The alleged statement by counsel contains an ambiguity that. . . adds to the potentially confusing nature of the read-in concept.
Id,., ¶ 13. According to the court of appeals, counsel's use of the word "guilt" created ambiguity:" [T]here are two ways a non-lawyer might plausibly understand [the phrase 'not admitting guilt']. One way is that Sulla was not admitting to committing the act of arson, and the other is that Sulla was not pleading guilty to an actual legal charge for doing that act." Id., ¶ 15 (emphasis in original). "[G]iven the potential for confusion that is inherent in the read-in concept," the court concluded that" Sulla has alleged sufficient facts that, if true, would entitle him to relief." Id.
¶ 20. The court of appeals then went on to consider the second prong of Nelson/Bentley — whether the record conclusively demonstrated that Sulla was not entitled to relief. Id., ¶ 16. The court began its analysis by pointing out what it believed was a "potential inconsistency [] present in the standards described in Bentley." Id., ¶ 17. It described the "potential inconsistency" as follows:
[C]ase law requires a hearing to be held if the defendant alleges facts that, if true, would entitle the defendant to relief, but it also allows a hearing to be denied if the record conclusively demonstrates that the defendant is not entitled to relief. These two concepts are potentially in conflict because the former seems to require an evidentiary hearing unconditionally, but the latter provides an option in which it appears that an evidentiary hearing can nonetheless be denied, even when the defendant makes allegations that *245 would entitle him to relief, if true. The relationship of these concepts is not made entirely clear in existing case law.
Id., | 17. To reconcile this purported inconsistency, the court of appeals invented its own test: "[W]e understand a record to 'conclusively demonstrate' the falsity of a defendant's factual allegations when, even after hearing the expected testimony in support of the postconviction motion at an evidentiary hearing, no reasonable fact-finder could find in the defendant's favor, in light of the rest of the record." Id., ¶ 18.
¶ 21. Applying its new test, the court of appeals concluded that "while . . . several aspects about the existing record D cast doubt on the accuracy of Sulla's allegations, none of them rise to the level of making it impossible for a reasonable fact-finder to believe that Sulla failed to properly understand the read-in concept . ..." Id., ¶ 21. As a result, the court of appeals remanded for an evidentiary hearing on Sulla's motion to withdraw his plea.
¶ 22. On June 18, 2015, the State filed a petition for review, which we granted. We now reverse the court of appeals.
II. STANDARD OF REVIEW
¶ 23. When examining a defendant's postconviction motion for plea withdrawal, we employ the following standard of review. " [W]hether a defendant's motion to withdraw a guilty plea 'on its face alleges facts which would entitle the defendant to relief and whether the record conclusively demonstrates that the defendant is entitled to no relief' are questions of law that we review de novo. State v. Howell, 2007 WI 75, *246 ¶ 78, 301 Wis. 2d 350, 734 N.W.2d 48 (footnotes omitted) (citing Bentley, 201 Wis. 2d at 310); see also State v. Allen, 2004 WI 106, ¶ 9, 274 Wis. 2d 568, 682 N.W.2d 433. However, "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." Allen, 274 Wis. 2d 568, ¶ 9 (citing Bentley, 201 Wis. 2d at 310-11; Nelson, 54 Wis. 2d at 497-98). "We review a circuit court's discretionary decisions under the deferential erroneous exercise of discretion standard." Id. "A circuit court properly exercises its discretion when it has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." Bentley, 201 Wis. 2d at 318. When reviewing a trial court's exercise of discretion, we are permitted to search the record for reasons to sustain such a determination. Klawitter v. Klawitter, 2001 WI App 16, ¶ 10 n.7, 240 Wis. 2d 685, 623 N.W.2d 169.
III. DISCUSSION
A. General Principles Regarding Plea Withdrawal
¶ 24. A defendant may withdraw his or her plea either before or after sentencing. State v. Cain, 2012 WI 68, ¶ 24, 342 Wis. 2d 1, 816 N.W.2d 177. "When a defendant moves to withdraw a plea before sentencing, 'a circuit court should "freely allow a defendant to withdraw his plea. . . for any fair and just reason, unless the prosecution [would] be substantially prejudiced." '" Id. (quoting State v. Jenkins, 2007 WI 96, ¶ 2, 303 Wis. 2d 157, 736 N.W.2d 24). In contrast, *247 "When a defendant moves to withdraw the plea after sentencing, the defendant 'carries the heavy burden of establishing, by clear and convincing evidence, that the trial court should permit the defendant to withdraw his plea to correct a "manifest injustice." Id., ¶ 25 (quoting State v. Thomas, 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836). "One way for a defendant to meet this burden is to show that he did not knowingly, intelligently, and voluntarily enter the plea." State v. Brown, 2006 WI 100, ¶ 18, 293 Wis. 2d 594, 716 N.W.2d 906; see also State v. Straszkowski, 2008 WI 65, ¶ 28, 310 Wis. 2d 259, 750 N.W.2d 835.
¶ 25. Two legal paths are available to a defendant who seeks to withdraw his plea after sentencing. The first is via a motion made pursuant to State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). "A defendant invokes Bangert when the plea colloquy is defective . . . ." Howell, 301 Wis. 2d 350, ¶ 74. The second is through a Nelson ¡Bentley motion for plea withdrawal. "[A] defendant invokes Nelson ¡Bentley when the defendant alleges that some factor extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm." Id. Sulla brings his challenge pursuant to Nelson /Bentley;[12] thus, we limit our discussion to the plea withdrawal procedure outlined in Nelson / Bentley.
*248 ¶ 26. The first prong of the Nelson /Bentley test provides: " [I]f a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing." Bentley, 201 Wis. 2d at 309 (alteration in original) (quoting Nelson, 54 Wis. 2d at 497). To meet this first prong, a defendant must allege "sufficient material facts" that would allow a reviewing court "to meaningfully assess a defendant's claim." Allen, 274 Wis. 2d 568, ¶ 23; see also Bentley, 201 Wis. 2d at 314 ("[A] defendant must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions." (quoting Key v. United States, 806 F.2d 133, 139 (7th Cir. 1986))). Specifically, a defendant should "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." Allen, 274 Wis. 2d 568, ¶ 23.
¶ 27. The second prong of Nelson/Bentley provides: " [I]f the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing." Bentley, 201 Wis. 2d at 309-10 (quoting Nelson, 54 Wis. 2d at 497-98).
¶ 28. In this case, the court of appeals struggled to properly apply Nelson/Bentley. Perhaps this is because the court of appeals neglected to examine any recent case law from this court. Indeed, the only law cited in the court of appeals' opinion is Nelson (1972), Bentley (1996), and Bangert (1986). Absent from the *249 court of appeals' opinion is any reference to our recent explanations of the Nelson /Bentley standard, which include State v. Allen, 2004 WI 106, 274 Wis. 2d 568, 682 N.W.2d 433, State v. Howell, 2007 WI 75, 301 Wis. 2d 350, 734 N.W.2d 48, State v. Straszkowski, 2008 WI 65, 310 Wis. 2d 259, 750 N.W.2d 835, and State v. Frey, 2012 WI 99, 343 Wis. 2d 358, 817 N.W.2d 436.
¶ 29. Had the court of appeals been so inclined, it could have read and applied these cases, and a costly, time-consuming appeal to this court could have been avoided. Be that as it may, the court of appeals concluded that Nelson/Bentley's two prongs potentially conflict because "the former seems to require an evidentiary hearing unconditionally, but the latter provides an option in which it appears that an eviden-tiary hearing can nonetheless be denied, even if the defendant makes allegations that would entitle him to relief, if true." Sulla, unpublished slip op., ¶ 17. A review of our existing case law confirms that we clarified any "potential inconsistency" years ago when we explained,
Bentley might be interpreted to make an evidentiary hearing mandatory whenever the motion contains sufficient, nonconclusory facts, even if the record as a whole would demonstrate that the defendant's plea was constitutionally sound. Such an interpretation of Nelson and Bentley, however, is not correct. The correct interpretation of Nelson /Bentley is that an evi-dentiary hearing is not mandatory if the record as a whole conclusively demonstrates that defendant is not entitled to relief, even if the motion alleges sufficient nonconclusory facts.
Howell, 301 Wis. 2d 350, ¶ 77 n.51; see also id., ¶ 150-153 (Prosser, J., dissenting) ("Two years ago in *250 [another case], I tried to explain the internal inconsistency I perceived in the Bentley decision. ... To its credit, the majority opinion corrects this festering problem. . . . The majority's clarification of the Bentley opinion restores to the circuit court the ability to form its independent judgment [on a Bentley plea withdrawal motion] after a review of the [entire] record and pleadings." (fourth and fifth alterations in original) (quotation marks and citation omitted)).
¶ 30. To be clear, a circuit court has the discretion to deny a defendant's motion — even a properly pled motion — to withdraw his plea without holding an evidentiary hearing if the record conclusively demonstrates that the defendant is not entitled to relief. With this framework in mind, we move on to consider whether the postconviction court, here, was required to hold an evidentiary hearing on Sulla's motion before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. To answer this question we must discuss (1) whether Sulla's motion to withdraw his plea alleged facts which, if true, would entitle him to relief; (2) whether the record conclusively demonstrates that Sulla is not entitled to relief; and (3) whether the postconviction court erroneously exercised its discretion when it denied Sulla's postconviction motion to withdraw his plea without holding an evidentiary hearing.
B. Read-in Charges and Their Role at Sentencing
¶ 31. Before turning to the three considerations listed above, we first take a moment to discuss generally sentencing and the role read-in charges play at sentencing.
*251 ¶ 32. "Wisconsin has a strong public policy that the sentencing court be provided with all relevant information." State v. Frey, 2012 WI 99, ¶ 45, 343 Wis. 2d 358, 817 N.W.2d 436 (quoting State v. Guzman, 166 Wis. 2d 577, 592, 480 N.W.2d 446 (1992)). Accordingly, a "sentencing court or jury must be permitted to consider any and all relevant information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." Id. (quoting Wasman v. United States, 468 U.S. 559, 563 (1984)). Notably, we have held that " 'a sentencing court may consider uncharged and unproven offenses' " regardless of "whether or not the defendant consents to having the charge read in. Indeed, the court may consider not only 'uncharged and unproven offenses' but also 'facts related to offenses for which the defendant has been acquitted.' " Id., ¶ 47 (quoting State v. Leitner, 2002 WI 77, ¶ 45, 253 Wis. 2d 449, 646 N.W.2d 341).
¶ 33. A read-in charge is any crime "that is uncharged or that is dismissed as part of a plea agreement, that the defendant agrees to be considered by the court at the time of sentencing and that the court considers at the time of sentencing the defendant for the crime for which the defendant was convicted." Wis. Stat. § 973.20(1g)(b).[13] Similar to Wis. Stat. § 973.20(lg)(b), we have defined read-in charges as "charges [that] are expected to be considered in sentencing, with the understanding that read-in charges could increase the sentence up to the maximum that the defendant could receive for the conviction in ex *252 change for the promise not to prosecute those additional offenses." Frey, 343 Wis. 2d 358, ¶ 68 (citation omitted).[14]
¶ 34. In Straszkowski, we examined "the history of read-in charges in this state" and set forth the proper procedure trial counsel and circuit courts should undertake when advising defendants about read-in charges. 310 Wis. 2d 259, ¶ 59. There, the defendant claimed that his plea was not "knowing and intelligent because he was unaware that a charge dismissed but read in under a plea agreement [was] deemed admitted for purposes of sentencing the defendant on the charge to which the defendant pled guilty." Id., f 2. After analyzing our precedent, we concluded that "Wisconsin's read-in procedure does not require a defendant to admit guilt of a read-in charge for purposes of sentencing and does not require a circuit court to deem the defendant to admit as a matter of law to the read-in crime for purposes of sentencing." Id., ¶ 92.
*253 ¶ 35. Consequently, we instructed trial counsel and circuit courts to take the following approach when advising defendants about read-in charges:
It is a better practice for prosecuting and defense counsel and circuit courts to omit any reference to a defendant admitting a read-in crime, except when the defendant [chooses to] admit guilt, and simply to recognize that a defendant's agreement to read in a charge affects sentencing in the following manner: a circuit court may consider the read-in charge when imposing sentence but the maximum penalty of the charged offense will not be increased; a circuit court may require a defendant to pay restitution on the read-in charges; and a read-in has a preclusive effect in that the State is prohibited from future prosecution of the read-in charge.
Id., ¶ 93 (footnotes omitted). Put simply, counsel and courts should refrain from advising defendants that a read-in charge necessitates admitting guilt. Id. Instead, counsel and courts should advise defendants that (1) the read-in charge will be considered by the sentencing court, but the maximum penalty will not be increased; (2) the defendant may be required to pay restitution on the read-in charge; and (3) the defendant may not be prosecuted for the read-in charge in the future. Id. With these general principles in mind, we now proceed to address Sulla's claim.
C. Whether Sulla's Motion to Withdraw His Plea Alleged Facts Which, if True, Would Entitle Him to Relief
f 36. Under the first prong of Nelson / Bentley, we examine whether Sulla's motion alleged sufficient facts that, if true, would entitle Sulla to relief. Bentley, *254 201 Wis. 2d at 309 (quoting Nelson, 54 Wis. 2d at 497). As noted previously, for a motion to be sufficient, it must "allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how." Allen, 274 Wis. 2d 568, ¶ 23. These "five w's' and one 'h'" make it so that a reviewing court has enough sufficient facts that it can "meaningfully assess a defendant's claim." Id.
¶ 37. Sulla's affidavit stated, in pertinent part,
[M]y attorney De La Rosa told me that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would 'look at' at sentencing. I did not understand and my Attorney did not explain the effect that a read-in offense has because Attorney De La Rosa did not explain it to me.
At its core, Sulla's motion to withdraw his plea and his accompanying affidavit allege that, in spite of Attorney De La Rosa specifically informing Sulla that the sentencing court would "look at" (or consider) the read-in charge for the purpose of sentencing, Sulla did not understand that the circuit court would consider the read-in charges for purposes of imposing a sentence.
f 38. The problem with Sulla's claim is that Attorney De La Rosa's alleged statement "that agreeing to the read-in offense of arson was not admitting guilt and that it was just something the Court would 'look at' at sentencing" is a correct statement of the law under Straszkowski and Frey. As we noted in both Straszkowski and Frey, "when the State and a defendant agree that charges will be read in, those charges are expected to be considered in sentencing." Frey, 343 Wis. 2d 358, ¶ 68; see also Straszkowski, 310 Wis. 2d 259, ¶ 93 (" [A] circuit court may consider the read-in *255 charge when imposing sentence but the maximum penalty of the charged offense will not be increased.").
¶ 39. Moreover, as noted previously in our discussion of Straszkowski, "no admission of guilt from a defendant for sentencing purposes is required (or should he deemed) for a read-in charge to he considered for sentencing purposes and to be dismissed." 310 Wis. 2d 259, ¶ 5 (emphasis added). Stated simply, Attorney De La Rosa's alleged statements to Sulla (1) "that agreeing to the read-in offense of arson was not admitting guilt," and (2) that the read-in offense was something the court would "look at" at sentencing are correct statements of the law under our precedent.
¶ 40. Even assuming Sulla is entitled to an evi-dentiary hearing because his motion alleged sufficient facts which, if true, would entitle Sulla to relief, we could still consider whether the record conclusively demonstrates that Sulla is not entitled to relief because he in fact understood the effect the read-in charges could have at sentencing. Here, we will proceed to consider the remainder of the record to determine whether Sulla in fact understood that the read-in charge would be considered by the circuit court when fashioning Sulla's sentence.
D. Whether the Record Conclusively Demonstrates That Sulla is Not Entitled to Relief
| 41. Under the second prong of Nelson /Bentley, we examine whether "the record conclusively demonstrates that the defendant is not entitled to relief." Bentley, 201 Wis. 2d at 309-10 (quoting Nelson, 54 Wis. 2d at 497-98). If it so demonstrates, then the "trial court may in the exercise of its legal discretion deny the motion without a hearing." Id.
*256 ¶ 42. In Allen, we considered what it meant for a record to conclusively demonstrate that a defendant was not entitled to the relief sought. 274 Wis. 2d 568, ¶ 30. There, we explained that the record conclusively refuted the defendant's claim that his trial counsel failed to contact potential witnesses because it contained specific statements by the defendant's attorney indicating that the attorney had investigated and ruled out each witness suggested by the defendant. Id.
¶ 43. As in Allen, in this case, the record conclusively refutes Sulla's claim that he was misinformed of and therefore did not understand the effect a read-in charge could have at sentencing. The record is replete with indications that Sulla was properly informed and understood that the sentencing court could consider the read-in charges when it determined his sentence.
¶ 44. First, the Plea Questionnaire/Waiver of Rights form — that Sulla read and signed — clearly explained the effect of a read-in charge at sentencing:
[I]f any charges are read-in as part of a plea agreement they have the following effects:
• Sentencing — although the judge may consider read-in charges when imposing sentence, the maximum penalty will not be increased.
• Restitution — I may be required to pay restitution on any read-in charges.
• Future prosecution — the State may not prosecute me for any read-in charges.![15]]
*257 ¶ 45. Second, at the plea hearing, the circuit court specifically discussed read-in charges — and their effect at sentencing — with Sulla:
THE COURT: Mr. Sulla, I understand that of the four counts made against you, you intend to withdraw your not guilty pleas and instead plead no contest to crimes in Counts 1 and 3 called armed burglary and burglary both as habitual criminals. Is that right?
SULLA: Yes, ma'am.
THE COURT: And then you expect that both sides will ask me to dismiss Counts 2 and 4, conspiracy to commit arson and operating motor vehicle without owner's consent, again both as habitual criminal, but have me consider those offenses when I sentence you, also true?
SULLA: Yes, ma'am.
THE COURT: These pleas are knowing, voluntary, and intelligent. They and the dismissed charges are sufficiently supported by fact. I accept the pleas, find the defendant to be a habitual criminal. Find him guilty as he's charged in Counts 1 and 3 and on the request of both parties and for the reasons provided by the district attorney, dismiss Counts 2 and 4. I'll consider them at sentencing.
(Emphasis added.)
¶ 46. Third, at the sentencing hearing, the circuit court explained precisely what effect that the read-in arson charge would have on its sentencing determination for Count 1:
I want to say two things. One is, you asked me to dismiss it and consider it as a read-in. So I'm going to. I'm not going to consider that you are uninvolved with *258 it. You gave me a victim — you gave me a plea questionnaire that says that you understand that if charges are read in as part of the plea agreement they have the following effect; at sentencing, the judge may consider read-in charges when imposing sentence, but the maximum penalty will not be increased and that you might be required to pay restitution for read-in charges and that the State can't prosecute you separately for it in the future.
(Emphasis added.)
¶ 47. Fourth, Sulla agreed to pay over $460,000 in restitution to the victims. As was noted by the postconviction court, this large sum of money can only be computed by factoring in the destruction of the victim's home due to arson (one of the read-in charges).
¶ 48. Finally, at the time of sentencing, Sulla had amassed a rather extensive criminal record. Included in his criminal record were 17 other charges that had been dismissed and read into the record. The fact that Sulla has past experience with read-in charges only further refutes his claim that he did not understand the effect a read-in charge could have at sentencing. In short, Sulla is not entitled to an evidentiary hearing on his motion for plea withdrawal because the record conclusively demonstrates that Sulla is not entitled to relief. Sulla was properly informed of and understood the effect the read-in charges would have at sentencing.
E. Whether the Postconviction Court Erroneously Exercised Its Discretion When it Denied Sulla's Postconviction Motion to Withdraw His Plea Without Holding an Evidentiary Hearing
¶ 49. We turn to our final consideration: whether the postconviction court erroneously exer *259 cised its discretion when it denied Sulla's postconviction motion to withdraw his plea without holding an evidentiary hearing. As discussed previously "A circuit court properly exercises its discretion when it has examined the relevant facts, applied the proper legal standards, and engaged in a rational decision-making process." Bentley, 201 Wis. 2d at 318.
¶ 50. Here, the circuit court both orally and in writing set forth its reasons for denying Sulla's motion to withdraw his plea without holding an evidentiary hearing. The postconviction court began its analysis by properly articulating the Nelson/Bentley framework. Next, the postconviction court made extensive and substantiated factual findings. Based on these findings, the postconviction court determined that Sulla was not entitled to an evidentiary hearing on his motion because his affidavit did not allege sufficient facts which, if true, would entitle Sulla to relief. In reaching this conclusion, the postconviction court properly recognized that the statements Sulla takes issue with in his motion for plea withdrawal are in fact "accurate statements of the law."
¶ 51. Though the court could have ended its analysis there, it proceeded to consider whether Sulla was not entitled to an evidentiary hearing on his motion because the record conclusively demonstrated that Sulla was not entitled to relief. In making that determination, the postconviction court combed through the entire record, highlighting the read-in language used in the Plea Questionnaire/Waiver of Rights form and the language used by the circuit court at the plea hearing and the sentencing hearing. Moreover, the postconviction court, citing our decision in Frey, properly zeroed in on the fact that the sentencing court could have considered the arson charge even if *260 Sulla had refused to have the charge read in as part of his plea agreement. See Frey, 343 Wis. 2d 358, ¶ 47. Relying on the entire record, and our case law, the postconviction court reasoned that Sulla was not entitled to an evidentiary hearing on his motion because the record conclusively demonstrated that Sulla was not entitled to relief, as Sulla was properly informed of and understood the effect the read-in charges would have at sentencing.
¶ 52. Stated otherwise, the postconviction court properly exercised its discretion when it denied Sulla's postconviction motion to withdraw his plea without holding an evidentiary hearing because it applied the proper legal standard, examined the relevant facts, and engaged in a rational decision-making process. The postconviction court had an abundance of information on which it could base its determination; thus, it was well within its discretion when it dismissed Sulla's motion to withdraw his plea without holding an evidentiary hearing.
IV. CONCLUSION
¶ 53. To summarize, we conclude that the post-conviction court was not required to hold an eviden-tiary hearing before it determined whether Sulla had entered his pleas in a knowing, intelligent, and voluntary fashion. Here, the postconviction court properly exercised its discretion when it denied Sulla's postcon-viction motion to withdraw his plea without first holding an evidentiary hearing because it applied the proper legal standard, examined the relevant facts, and engaged in a rational decision making process. Moreover, when we apply the Nelson /Bentley test to this case, we conclude that Sulla is not entitled to an evidentiary hearing on his postconviction motion to *261 withdraw his plea. The record in this case, specifically the Plea Questionnaire/Waiver of Rights form and the transcripts from the plea hearing and the sentencing hearing, conclusively demonstrates that Sulla is not entitled to relief because he was correctly informed of and understood the effect of the read-in charges at sentencing.
By the Court. — The decision of the court of appeals is reversed.

 State v. Sulla, No.2013AP2316-CR, unpublished slip op. (Wis. Ct. App. May 21, 2015) (per curiam).

 The Honorable David J. Wambach presided over the postconviction motion hearing.

 The State charged Sulla with the following:
1. Count 1: Burglary, arming oneself with a dangerous weapon, contrary to Wis. Stat. §§ 943.10(2)(b) and 939.62(l)(c)
2. Count 2: Conspiracy to commit arson, contrary to Wis. Stat. §§ 943.02(l)(a), 939.31, and 939.62(l)(e)
3. Count 3: Burglary, contrary to Wis. Stat. §§ 943.10(lm)(a) and 939.62(l)(c); and
4. Count 4: Operating a motor vehicle without the owner's consent, as a party to a crime, contrary to Wis. Stat. §§ 943.23(2), 939.05, and 939.62(l)(b).

 The Honorable Jacqueline R. Erwin presided over the plea hearing and the sentencing hearing.

 Sulla also raises issues related to judicial bias and ineffective assistance of counsel in his briefing; however, these arguments were not raised in the petition for review. We did not order that any issues presented outside of the petition for review be granted and briefed. Therefore, we do not address Sulla's additional arguments. See Jankee v. Clark Cty., 2000 *234 WI 64, ¶ 7, 235 Wis. 2d 700, 612 N.W.2d 297 ("Generally, a petitioner cannot raise or argue issues not set forth in the petition for review unless the court orders otherwise. If an issue is not raised in the petition for review or in a cross petition, 'the issue is not before us.'" (citation and footnote omitted) (quoting State v. Weber, 164 Wis. 2d 788, 791 n.2, 476 N.W.2d 867 (1991) (Abrahamson, J., dissenting))).

 For Count 1 (armed burglary), Sulla could have been imprisoned not more than 15 years plus a 6 year repeat offender enhancer. For Count 2 (arson), Sulla could have been imprisoned not more than 40 years plus a 6 year repeat offender enhancer. For Count 3 (burglary), Sulla could have been imprisoned not more than 12 years and 6 months plus a 6 year repeat offender enhancer. For Count 4 (operating a vehicle without consent), Sulla could have been imprisoned not more than 6 years plus a 4 year repeat offender enhancer. Adding all four counts together totals 95 years and 6 months.

 Attorney Jeffery De La Rosa represented Sulla at his plea hearing.

 The circuit court methodically applied the sentencing factors set forth in State v. Gallion, 2004 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, stating, "As always, the Court considers three categories, three factors in any sentence. One is the character of the defendant. Another is the nature and gravity of the crimes and a third is the need for public protection. And I'll do that here and I'll do it in about that series."

 Before imposing its sentence, the circuit court asked Sulla if "there was anything [he] would like to say." Sulla took the opportunity to comment on his criminal history and to apologize to the victims. At no point did Sulla ask for clarification regarding his plea agreement or the effect a read-in charge could have on his sentence.

 Sulla brought his motion for postconviction relief pursuant to Wis. Stat. § 809.30.

 Attorney Scott A. Szabrowicz has continued to represent Sulla throughout Sulla's postconviction proceedings.

 Sulla does not challenge the court of appeals' classification of his motion as a motion for plea withdrawal under Nelson v. State, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), modified by, State v. Bentley, 201 Wis. 2d 303, 548 N.W.2d 50 (1996). Moreover, Sulla's brief to this court cites exclusively to Nelson/Bentley; it does not cite State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

 Chapter 973 of the Wisconsin Statutes governs sentencing.

 In State v. Frey, 2012 WI 99, 343 Wis. 2d 358, 817 N.W.2d 436, we commented on the benefits both the State and a defendant receive from the read-in charge procedure. 343 Wis. 2d 358, ¶¶ 69—74. On the one hand, the State "preserves precious prosecutorial resources by not prosecuting other charges," while having the defendant" expose[] himself to the likelihood of a higher sentence within the sentencing range and the additional possibility of restitution for the offenses that are 'read-in.' " Id., ¶¶ 70, 73. On the other hand, the defendant cleans "his slate of several uncharged crimes with the safety of only receiving at most the maximum sentence on the crimes of which he is convicted and receive [s] immunity from future prosecution of any read-in offense." Id., ¶ 71 (quotation marks and emphasis omitted) (quoting Embry v. State, 46 Wis. 2d 151, 158, 174 N.W.2d 521).

 We note that the three points listed in the Plea Questionnaire/Waiver of Rights form match the three points we listed in State v. Straszkowski, 2008 WI 65, ¶ 93, 310 Wis. 2d 259, 750 N.W.2d 825.