COURT OF APPEALS
DECISION
DATED AND FILED

November 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2023AP174-CR**
**2023AP175-CR**
**2023AP176-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2018CF412
2018CF1245
2018CF1657

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ROBERT L. THOMAS,

DEFENDANT-APPELLANT.

APPEAL from judgments and an order of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed.*

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. In these consolidated appeals, Robert L. Thomas appeals the judgments entered after a jury convicted him of seven crimes in three cases. He also appeals the order denying postconviction relief in the three cases. Thomas argues the cases were improperly joined for trial and his trial counsel was ineffective for failing to seek severance. We disagree and affirm.

## BACKGROUND

¶2 On March 14, 2018, police responded to a ShotSpotter detection.[1] Thomas, a convicted felon, was the only person observed in the vicinity. Officers discovered a loaded .40 caliber Smith & Wesson handgun with its serial number filed off in Thomas's pocket.

¶3 The following day, an officer "test fired" Thomas's gun to retrieve a bullet casing, which he compared with those found at the scene of several area shootings from the preceding two years. The ensuing analysis revealed that it was "highly probable" that Thomas's gun was used in the shooting incidents described below. The State pursued three separate criminal cases against Thomas. The details that follow are taken from the allegations in the criminal complaints.

¶4 In Milwaukee County Case No. 2018CF412, the State charged Thomas with first-degree recklessly endangering safety by use of a dangerous weapon and with possessing a firearm as a felon.[2] C.J.D. reported that Thomas

---

[1] ShotSpotter is technology that employs "acoustic sensors" to track gunshot sounds and report their location to police for further investigation. *State v. Nimmer*, 2022 WI 47, ¶4, 402 Wis. 2d 416, 975 N.W.2d 598.

[2] The complaint in this case was filed before the police recovered Thomas's gun.

fired a gun at him striking his vehicle three times. Officers observed Thomas shooting at C.J.D.

¶5 In Milwaukee County Case No. 2018CF1245, the State charged Thomas with one count of possessing a firearm as a felon stemming from the ShotSpotter incident where officers recovered the loaded handgun from Thomas.

¶6 In Milwaukee County Case No. 2018CF1657, the State charged Thomas with animal mistreatment by use of a dangerous weapon, first-degree reckless homicide by use of a dangerous weapon, and two counts of possessing a firearm as a felon. The animal mistreatment and related felon-in-possession charge stemmed from an incident that took place in June 2016. R.W. reported that she let Bullet, her nine-month-old dog, into the front yard. She observed Thomas tell the dog to get back. When the dog re-approached him, Thomas pulled out a gun, shot, and killed Bullet. A single spent .40 caliber casing was recovered from the scene. In April 2018, R.W. identified Thomas as the shooter after looking at a photo array.

¶7 The reckless homicide and related felon-in-possession charge stemmed from an incident that took place in March 2017 when police were dispatched to investigate a "shots-fired" complaint. Upon arrival they observed J.A.R. dead from an apparent gunshot wound to the head. Police located four Smith & Wesson .40 caliber casings. J.A.R.'s girlfriend provided the police with J.A.R.'s phone number. Records revealed that Thomas spoke with J.A.R. on an almost daily basis. The last call Thomas made to J.A.R. was just minutes prior to the homicide. There were no subsequent calls to J.A.R. from Thomas.

3

¶8      The three cases were joined for trial over the objection of trial counsel.  Thomas subsequently waived his right to counsel, and the circuit court allowed him to proceed *pro se* with appointed standby counsel.  Following a jury trial, Thomas was convicted of all of the charges.  The circuit court imposed sentences totaling forty-six years of initial confinement and twenty-nine years of extended supervision.

¶9      Thomas filed a postconviction motion alleging the circuit court erred when it joined the cases, and his trial counsel was ineffective for not requesting severance of the homicide and the animal mistreatment charges.  The circuit court denied the motion without holding a hearing.

¶10     This appeal follows.  Additional background information relevant to the issues raised on appeal will be included below.

## DISCUSSION

### I.  Joinder

#### A.  *Standard of Review and Governing Legal Principles*

¶11     We begin with Thomas's argument that the circuit court erred by joining the three cases prior to trial, over his objection.  According to Thomas, joinder triggered the admission of "unduly prejudicial propensity evidence" concerning "three separate[,] distinct, completely unconnected crimes."

4

¶12    Joinder is governed by WIS. STAT. § 971.12 (2021-22).[3]  "The court may order [two] or more complaints, informations or indictments to be tried together if the crimes … could have been joined in a single complaint, information or indictment."  Sec. 971.12(4).  Two or more crimes may be charged in the same complaint if the crimes charged (1) are of the "same or similar character"; (2) are based on "the same act or transaction"; (3) are "connected together"; or (4) "constitut[e] parts of a common scheme or plan."  *See* § 971.12(1).  We review this initial decision on joinder by the circuit court *de novo*.  ***State v. Salinas***, 2016 WI 44, ¶30, 369 Wis. 2d 9, 879 N.W.2d 609.

¶13    We owe no deference to the circuit court's decision, but the joinder statute should be broadly construed in favor of initial joinder.  ***State v. Locke***, 177 Wis. 2d 590, 596, 502 N.W.2d 891 (Ct. App. 1993).  Our supreme court "'has historically favored' initial joinder particularly when the charged crimes were all 'committed by the same defendant.'"  ***Salinas***, 369 Wis. 2d 9, ¶36 (citation omitted).

¶14    In determining whether separate crimes are sufficiently connected together for purpose of initial joinder, we consider a variety of factors, which include:

> (1) are the charges closely related; (2) are there common factors of substantial importance; (3) did one charge arise out of the investigation of the other; (4) are the crimes close in time or close in location, or do the crimes involve the same victims; (5) are the crimes similar in manner, scheme or plan; (6) was one crime committed to prevent

---

[3] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

punishment for another; and (7) would joinder serve the goals and purposes of WIS. STAT. § 971.12.

*Salinas*, 369 Wis. 2d 9, ¶43.

### B. The Circuit Court Properly Joined Thomas's Cases for Trial.

¶15    Here, in granting the State's motion, the circuit court explained that the charges were joinable under WIS. STAT. § 971.12(4) and would promote efficient judicial administration.  The circuit court held that the alleged crimes occurred in a relatively short period of time and had overlapping evidence.  The court further concluded that there was no showing of substantial prejudice under § 971.12(3).

¶16    Upon our *de novo* review, we agree with the court's conclusion that joinder was appropriate.  The shooting charges were connected together in multiple ways.

¶17    First, the charges in the three complaints were closely related.  *See Salinas*, 369 Wis. 2d 9, ¶43.  Each complaint alleged that Thomas possessed a handgun as a convicted felon, and more specifically, each complaint alleged that Thomas fired that handgun in Milwaukee neighborhoods killing Bullet, killing J.A.R., injuring C.J.D., and triggering the ShotSpotter alert that led to his arrest.

¶18    Second, the three complaints shared common factors of substantial importance.  *See id.*  The State was prepared to answer the question of who was responsible for shooting incidents with ballistics evidence proving that the gun found in Thomas's pocket was the same gun used to shoot the various victims.  Additionally, the State planned to utilize eyewitness testimony describing how

Thomas fired a handgun on several occasions between June 12, 2016, and his arrest on March 14, 2018.

¶19    Third, the crimes arose from a relatively short period of time and in a close area. *See id.*  J.A.R.'s murder came only nine months after the murder of Bullet, C.J.D. was shot in the chest just nine months after J.A.R.'s murder, and Thomas was found with the murder weapon used in all three shootings just three months later.  Moreover, all three shootings occurred within just two to three miles of one another in the same Milwaukee metropolitan area.

¶20    Fourth, in terms of whether one charge arose out of the investigation of the other, this is true for some of the charges.  In his briefing, Thomas acknowledges "that the recovery of the gun led the [S]tate to connect [him] to the homicide and the canicide[.]"[4]  *See id.*  However, he argues that this factor does not fit within the meaning of "did one charge result from the investigation of another" because "when the police investigated the canicide, they were not led to any additional crimes committed by" him.  We are not convinced by Thomas's hyper technical reading of this factor, and instead, deem it to be applicable here.

¶21    Fifth, joinder served the goals and purposes of WIS. STAT. § 971.12. *See Salinas*, 369 Wis. 2d 9, ¶43.  While attempting to minimize the extent of the overlap, Thomas acknowledges that it did exist.  He also recognizes the "gain in judicial economy," but asserts that it is the same gain that is present whenever cases are joined.  We disagree and conclude that this factor is applicable.  *See id.*

---

[4] Throughout his briefing, Thomas refers to the animal mistreatment charge involving Bullet as a canicide, which is how the crime is described in the probable cause section of the complaint.  We do the same in the discussion section of this opinion.

("The purpose of joinder is to promote economy and efficiency in judicial administration and avoid multiple trials.").

¶22    Numerous *Salinas* factors apply and permit initial joinder under a theory that the crimes are connected together.  To the extent Thomas arrives at a different conclusion and otherwise focuses on the factors he believes are lacking, we note that charges may be connected together for purposes of joinder when many of the seven listed factors are applicable, notwithstanding the inapplicability of some of them.  *See id.*, ¶44.

### C. Joinder Was Not Substantially Prejudicial.

¶23    Even when joinder is permissible, the circuit court may order separate trials "[i]f it appears that a defendant … is prejudiced by a joinder of crimes[.]"  WIS. STAT. § 971.12(3).  "[T]he proper joinder of criminal offenses is presumptively non-prejudicial."  *State v. Prescott*, 2012 WI App 136, ¶13, 345 Wis. 2d 313, 825 N.W.2d 515.  "In order to rebut that presumption, the defendant must show substantial prejudice to his defense; some prejudice is insufficient."  *Id.* Whether joinder is unduly prejudicial to a defendant is a question we review for an erroneous exercise of discretion.  *See State v. Hall*, 103 Wis. 2d 125, 140, 307 N.W.2d 289 (1981).

¶24    Thomas contends that the prejudice was clear in that the State sought to use alleged random acts of violence to help paint a picture of Thomas's character.  In determining whether joinder is prejudicial, we consider whether the same evidence that would be admissible at a joint trial would also be admissible as other-acts evidence at the separate trial for each crime.  *See id.* at 141-42. "[W]hen evidence of the counts sought to be severed is admissible in separate

8

trials, 'the risk of prejudice arising due to a joinder of offenses is generally not significant.'" *Id.* at 141 (citation omitted).

¶25    Our supreme court has developed a three-prong test to guide courts in determining whether other-acts evidence is admissible under WIS. STAT. § 904.04. *State v. Sullivan*, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). Other-acts evidence is admissible:

> (1) if it is offered for a permissible purpose, other than the prohibited propensity purpose, pursuant to WIS. STAT. § 904.04(2)(a), (2) if it is relevant under the two relevancy requirements in WIS. STAT. § 904.01, and (3) if its probative value is not substantially outweighed by the risk or danger of unfair prejudice under WIS. STAT. § 904.03.

*State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399 (citing *Sullivan*, 216 Wis. 2d at 772-73) (footnote omitted).

¶26    At the outset we note that Thomas contends the circuit court simply deferred to the State's argument and did not exercise its discretion when it determined that joinder did not result in substantial prejudice to him. Even if we were to accept that this is true, "[w]e generally look for reasons to sustain the [circuit] court's discretionary decisions." *State v. Lock*, 2012 WI App 99, ¶43, 344 Wis. 2d 166, 823 N.W.2d 378. Adequate reasons exist here.

¶27    Thomas acknowledges that the recovery of the handgun "could have been properly joined and[/]or used as evidence in each of the other cases[.]" However, he contends the applicable case law does not permit the State to present the *entirety* of its evidence of the canicide and the recklessly endangering safety charge as "other acts" in the homicide case. Thomas asserts the only acceptable purpose the State can offer the evidence for under the three-part test of *Sullivan* is

9

proof of identity. He goes on to argue that there was other evidence of identity in each case that the State could have used, and he emphasizes that other-acts evidence should be used sparingly.

¶28 Thomas does not explain how evidence relating to recovery of the handgun would have been probative to any issue if the jury never learned that Thomas was the shooter in the other incidents. As summed up by the State:

> [T]he ballistics evidence was only probative insomuch as it revealed that the same gun found in Thomas's pocket was used at three separate shootings. Without context, that ballistics evidence would have made no sense to the jury, leaving its members to question why it mattered if two, three, or four bullets in the State's possession were fired from the same gun.

We further note that in addition to identity, evidence gathered at the various crime scenes was admissible for purposes of intent and lack of mistake. *See* WIS. STAT. § 904.04(2)(a).

¶29 The evidence was relevant and highly probative as it identified the shooter and his role in the crimes. Furthermore, the evidence's significant probative value was not substantially outweighed by a danger of unfair prejudice. It is not enough for Thomas to prove that the evidence was prejudicial because nearly all relevant evidence is prejudicial to the party opposing it. Rather, the issue is whether the resulting prejudice is unfair. *State v. Payano*, 2009 WI 86, ¶88, 320 Wis. 2d 348, 768 N.W.2d 832. To that end, a court must assess whether the other-acts evidence will influence the trial outcome by causing the jury to draw the forbidden propensity inference. *Id.*, ¶89.

¶30 Here, any risk of unfair prejudice did not substantially outweigh the probative value of evidence gathered at each of Thomas's shooting incidents.

10

There was no question that the shootings occurred; the parties only disputed who committed them. Evidence in the form of ballistics testing and eyewitness testimony establishing that Thomas possessed the murder weapon and fired it during several altercations over a span of two years was extremely probative to establishing the identity of the gunman in Thomas's three cases. The circuit court did not erroneously exercise its discretion in joining the cases because Thomas cannot show that joinder was substantially prejudicial.

## II. Ineffective Assistance of Counsel

### A. *Standard of Review and Governing Legal Principles*

¶31  Next, we address Thomas's claim that trial counsel was ineffective for not specifically moving to sever the canicide from the homicide relating to J.A.R., both of which were charged in the same complaint. Like the argument above, this argument is premised on Thomas's belief that none of the factors detailed in *Salinas* apply. Thomas emphasizes that the canicide happened nine months before the homicide and argues that the only link between the two crimes was the ballistic evidence. Absent that evidence, he claims joining the canicide with the homicide cannot survive scrutiny.

¶32  To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Whether counsel's performance was deficient and whether any deficiency was prejudicial are questions of law that we review *de novo*. *State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990). To demonstrate deficient performance, the defendant must show that counsel's actions or omissions "fell

11

below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. If a defendant fails to satisfy one component of the analysis, a reviewing court need not address the other. *Id.* at 697.

¶33 Counsel's "failure to pursue a meritless argument does not constitute deficient performance," *State v. Sandoval*, 2009 WI App 61, ¶34, 318 Wis. 2d 126, 767 N.W.2d 291, and counsel's failure to pursue a legal challenge does not prejudice the defense if the defendant cannot establish that the challenge would have succeeded, *State v. Ziebart*, 2003 WI App 258, ¶14, 268 Wis. 2d 468, 673 N.W.2d 369. Moreover, a claim of ineffective assistance of counsel predicated on a failure to challenge a correct circuit court ruling cannot establish either deficiency or prejudice. *Id.*

¶34 A defendant is not entitled to a *Machner*[5] hearing simply based on allegations that his or her counsel was ineffective. *State v. Allen*, 2004 WI 106, ¶10, 274 Wis. 2d 568, 682 N.W.2d 433. The circuit court can deny a postconviction motion without a hearing "if all the facts alleged in the motion, assuming them to be true, do not entitle the movant to relief; if one or more key factual allegations in the motion are conclusory; or if the record conclusively demonstrates that the movant is not entitled to relief." *Id.*, ¶12 (footnote omitted). Whether the record conclusively shows that the defendant is not entitled to relief is

---

[5] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

a question of law that this court reviews *de novo*. ***State v. Sulla***, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659.

### B. Counsel Was Not Ineffective.

¶35    Thomas contends that trial counsel's failure to make a specific motion to sever the homicide and the canicide amounted to deficient performance. He additionally asserts that he was prejudiced because, when combined with the shooting involving C.J.D., hearing all of the charges during one trial "create[d] the overstrong tendency to convict" him.

¶36    Thomas essentially complains that counsel should have moved the circuit court to sever various charges within one case that it had already joined with other cases for trial. While the circuit court ultimately held that Thomas's postconviction motion was inadequately pled, it separately agreed that the record conclusively demonstrated that Thomas was not entitled to relief because it would not have granted a severance motion. We likewise conclude that the record, which makes clear that joinder was proper, conclusively demonstrates Thomas is not entitled to relief on this claim. As summed up by the State, defense counsel cannot be said to have been ineffective for not "doubling down on a losing argument."

*By the Court.*—Judgments and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.