**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 23, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.    2021AP1512
                        2022AP158
STATE OF WISCONSIN**

Cir. Ct. No.  2014CF618

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

PHILLIP A. BYRD,

   DEFENDANT-APPELLANT.

APPEALS from orders of the circuit court for Dane County: JOHN W. MARKSON and SUSAN M. CRAWFORD, Judges. *Affirmed.*

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Phillip Byrd was convicted, upon his guilty plea, of second-degree intentional homicide.  The circuit court, in separate decisions, denied without a hearing Byrd's initial motion and his "amended supplemental" motion for postconviction relief.  The court denied Byrd's initial motion as procedurally barred or, in the alternative, because the allegations in the motion were conclusory or the record conclusively showed that Byrd was not entitled to relief.  The court denied the "amended supplemental" motion as procedurally barred or, in the alternative, as an "improper motion for reconsideration."  Byrd separately appealed each of the court's decisions and we consolidated the appeals.[1]  Byrd argues, and the State agrees, that Byrd's initial motion is not procedurally barred.  We accept the State's concession that Byrd's initial motion is not procedurally barred.  However, as we explain, we reject Byrd's remaining arguments as to why he is entitled to relief under either of his motions and, therefore, we affirm.

## BACKGROUND

¶2     In 2014, the State charged Byrd with first-degree intentional homicide, domestic abuse, with use of a dangerous weapon.  The criminal complaint alleged that in February 2014 Byrd fatally shot A.B. during an altercation.[2]  The

---

[1] These appeals were consolidated for briefing and disposition by an order dated February18, 2022.

The Honorable John W. Markson presided over the plea and sentencing proceedings, and the Honorable Susan M. Crawford presided over the postconviction proceedings.  We refer to Judge Markson as the "trial court" and to Judge Crawford as the "circuit court."

Byrd was represented by counsel during the plea and sentencing proceedings.  He proceeded pro se when he filed his motions for postconviction relief and he proceeds pro se on appeal.

[2] We refer to the victim by a set of initials different from her own, consistent with the policy underlying WIS. STAT. § 809.86(4) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

complaint further alleged that Byrd was arrested the day after the incident on warrants unrelated to the incident and that, in the days after Byrd was arrested, law enforcement twice interviewed Byrd at his request. During those interviews, according to the complaint, Byrd described what happened during the incident and made inculpatory statements. In July 2014, Byrd pleaded guilty to a reduced charge of second-degree intentional homicide. In January 2015, Byrd was sentenced to twenty years of initial confinement and eight years of extended supervision.

¶3 In 2021, Byrd filed a motion for postconviction relief and, after the circuit court denied that motion without an evidentiary hearing, he filed an "amended supplemental" motion for postconviction relief; in both motions Byrd sought the withdrawal of his plea under WIS. STAT. § 974.06. The circuit court also denied the "amended supplemental" motion without an evidentiary hearing. As stated, we consolidated Byrd's appeals of both circuit court decisions.

## DISCUSSION

### I. Byrd's Initial Motion for Postconviction Relief

¶4 A defendant may withdraw a guilty or no contest plea after sentencing "only upon a showing of 'manifest injustice' by clear and convincing evidence." *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996). In his initial motion seeking plea withdrawal, Byrd asserted as grounds for showing a manifest injustice that: (1) the State breached the plea agreement; (2) his plea was not entered knowingly, voluntarily, and intelligently because the trial court did not establish that Byrd understood the nature of the crime or the constitutional rights he was waiving and his "mental condition and medication interfered with [his] abilities"; and

3

(3) trial counsel was ineffective in numerous respects.[3] We first state the standard of review of the circuit court's decision denying Byrd's motion. We next address each assertion in turn.

¶5 The standard of review of a circuit court's decision denying a motion for postconviction relief without a hearing is well established. A postconviction motion must allege sufficient material facts that, if true, would entitle the defendant to relief. *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. A motion does not entitle a defendant to relief if it contains "only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Id.*, ¶28. Whether a motion suffices to entitle a defendant to relief is a question of law that this court reviews de novo. *State v. Sulla*, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659; *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

---

[3] Byrd also may have been seeking new sentencing in his initial motion, based on his assertion that the trial court did not sufficiently consider his mental and physical health at sentencing. If so, his argument fails. The transcript of the sentencing hearing shows that the court did consider Byrd's mental health and need for treatment. Byrd essentially argues that the court should have weighed those considerations differently, but we do not disturb on appeal the court's weighing of the various sentencing factors. *See State v. Ziegler*, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76 (the weight to be given each sentencing factor is committed to the sentencing court's discretion).

As the circuit court noted, Byrd listed many claims and "subclaims for relief" in the preprinted form and his supporting memorandum, but most of those claims and subclaims were conclusory statements that were not supported by any statements of fact or were waived by Byrd's guilty plea. *See* WIS. STAT. § 971.31(10); *State v. Hampton*, 2010 WI App 169, ¶23, 330 Wis. 2d 531, 793 N.W.2d 901 (stating that § 971.31(10) provides a narrow exception to the rule that a guilty plea waives all nonjurisdictional defects and defenses by allowing appellate review of the denial of a motion to suppress). We address on appeal the claims and subclaims that Byrd factually supported in the preprinted form and his supporting memorandum, as well as all of his arguments, as we can discern them, on appeal. *See State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432 (the issue on appeal is whether the motion sufficed to entitle the defendant to relief).

¶6      If the motion suffices to entitle the defendant to relief, then the circuit court is required to grant a hearing on the motion. *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608.  If the motion does not suffice to entitle the defendant to relief, then it is within the court's discretion as to whether to hold a hearing. *Id.*; *Allen*, 274 Wis. 2d 568, ¶9.  Here, the circuit court determined that Byrd's postconviction motions did not entitle him to relief and denied his motions without a hearing.  Byrd's appeal raises only the legal question of whether a hearing was required because his motions sufficed to entitle him to a hearing.  Accordingly, the State's reference to the legal principle that an appellate court may search the record to sustain the circuit court's exercise of discretion is inapt.[4]

### A.  Breach of Plea Agreement

¶7      The first "manifest injustice" ground for Byrd's plea withdrawal motion was his allegation, which he reiterates on appeal, that the State breached the plea agreement "by implying to the court that [Byrd] deserve[d] more punishment than was bargained for."  In his motion, Byrd pointed to the prosecutor's remarks at

---

[4] Byrd responds to the State's presenting the circuit court's decision as an exercise of discretion by arguing in reply that appellate review "is impossible" because the circuit court did not properly exercise its discretion when it did not consider the memorandum of law that he filed in support of the initial motion and considered only the short preprinted form identifying his claims, which Byrd filed along with the memorandum.  Regardless of whether the circuit court considered Byrd's supporting memorandum, appellate review is possible because, as stated, whether Byrd's motion suffices to entitle him to a hearing is a legal question that we review independently of the circuit court. *See State v. Sulla*, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659 (whether a motion suffices to entitle a defendant to relief is a question of law that this court reviews de novo).  Our review of the sufficiency of Byrd's motion includes the memorandum that Byrd filed along with the preprinted form.

sentencing acknowledging that Byrd pleaded to "imperfect self-defense"[5] but then characterizing Byrd's belief that he was defending himself as not only unreasonable but "totally misplaced … overkill … unnecessary … more consistent with straight up execution."

¶8      "Whether the State breached a plea agreement is a mixed question of fact and law." *State v. Naydihor*, 2004 WI 43, ¶11, 270 Wis. 2d 585, 678 N.W.2d 220.  The terms of the plea agreement and the facts surrounding the State's alleged breach are questions of fact that we review under the clearly erroneous standard.  *Id.* "Whether the State's conduct constitutes a material and substantial breach of the plea agreement is a question of law that this court reviews de novo."  *Id.*

¶9      A criminal defendant "has a constitutional right to the enforcement of a negotiated plea agreement."  *State v. Williams*, 2002 WI 1, ¶37, 249 Wis. 2d 492, 637 N.W.2d 733.  "[O]nce an accused agrees to plead guilty in reliance upon a prosecutor's promise to perform a future act, the accused's due process rights demand fulfillment of the bargain."  *Id.*; *see also State v. Ferguson*, 166 Wis. 2d 317, 321, 479 N.W.2d 241 (Ct. App. 1991) ("If a guilty plea 'rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" (quoted source

---

[5] The charge to which Byrd pleaded guilty was second-degree intentional homicide by causing the death of A.B. "with intent … to kill [her] by unnecessary defensive force."  That crime includes as an element that Byrd did not reasonably believe he was preventing or terminating an unlawful interference with his person or did not reasonably believe that the force used was necessary to prevent imminent death or great bodily harm to himself.  *See* WIS JI-CRIMINAL 1016 (2015).  This is commonly referred to as "imperfect self-defense."  *See State v. Head*, 2002 WI 99, ¶¶51, 85, 90, 255 Wis. 2d 194, 648 N.W.2d 413 (referring to "unnecessary defensive force" as defined in WIS. STAT. § 940.01(2)(b) as "imperfect self-defense," which requires that a defendant had the "unreasonable belief" that the defendant was in imminent danger of death or great bodily harm and the "unreasonable belief" that the force the defendant used was necessary to defend the defendant).  Under § 940.01(2)(b), "[u]nnecessary defensive force" is an affirmative defense that mitigates the crime of first-degree intentional homicide to second-degree intentional homicide under WIS. STAT. § 940.05.

omitted)). The State breaches the agreement by violating the terms of the agreement so as to "defeat[] the benefit for which the accused bargained." ***Williams***, 249 Wis. 2d 492, ¶38.

¶10 Here, the parties agreed only as to the charge to which Byrd would plead guilty. The prosecutor expressly informed the trial court that "[t]here are no agreements as to what the State may ask for [at sentencing] or no caps [on what the State may ask for]." Thus, Byrd bargained only for a reduced charge, from first-degree intentional homicide to second-degree intentional homicide. The prosecutor's comments cited by Byrd may have been intended to show that Byrd's conduct warranted a heavy penalty because his belief was extremely unreasonable, but Byrd points to no part of the prosecutor's remarks that asked the court to impose more than the maximum penalty for the reduced charge to which the parties agreed. That is, the prosecutor's remarks cited by Byrd did not defeat the benefit, the reduced charge, for which Byrd bargained. Accordingly, the record conclusively refutes Byrd's allegation that the State breached the plea agreement.[6]

### B. Knowing, Intelligent, and Voluntary Plea

¶11 A defendant may also meet the "manifest justice" test by showing that the defendant "did not knowingly, intelligently, and voluntarily enter the plea." ***Sulla***, 369 Wis. 2d 225, ¶24 (quoted source omitted); ***State v. Dillard***, 2014 WI 123, ¶37, 358 Wis. 2d 543, 859 N.W.2d 44; *see also* ***State v. Burton***, 2013 WI 61, ¶73, 349 Wis. 2d 1, 832 N.W.2d 611 ("Waiving constitutional rights must be knowing,

---

[6] Byrd may also be arguing that the State breached the plea agreement by reneging on its "concession" that there is evidence to show that Byrd acted with the unreasonable belief that he was defending himself, when the prosecutor at sentencing told the trial court that Byrd's conduct "was unnecessary self-defense" rather than "imperfect self-defense." As explained in footnote 5 above, the terms "unnecessary self-defense" and "imperfect self-defense" have the same meaning in this context.

intelligent, and voluntary acts 'done with sufficient awareness of the relevant circumstances and likely consequences.'" (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970))). If a guilty plea is not entered knowingly, intelligently, and voluntarily, the defendant is entitled to withdrawal of the plea "as a matter of right because such a plea 'violates fundamental due process.'" *State v. Finley*, 2016 WI 63, ¶13, 370 Wis. 2d 402, 882 N.W.2d 761 (quoting *State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906).

¶12 A defendant may show that the defendant's plea was not knowingly, intelligently, and voluntarily entered under either of two lines of cases: (1) the *Bangert* line of cases, *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), when the plea colloquy itself is defective; or (2) the *Nelson*/*Bentley* line of cases, *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972), and *State v. Bentley*, 201 Wis. 2d 303, when "some factor extrinsic to the plea colloquy, like ineffective assistance of counsel or coercion, renders a plea infirm." *State v. Howell*, 2007 WI 75, ¶¶2, 74, 301 Wis. 2d 350, 734 N.W.2d 48. Under the second line of cases, the burden is on the defendant to show that the plea was not entered knowingly, intelligently, and voluntarily. *State v. Hoppe*, 2009 WI 41, ¶60, 317 Wis. 2d 161, 765 N.W.2d 794.

¶13 "Whether a defendant's plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact." *Dillard*, 358 Wis. 2d 543, ¶38. We uphold the circuit court's findings of historical fact unless those are clearly erroneous. *Id.* We review de novo whether the facts demonstrate that the plea was not entered knowingly, intelligently, and voluntarily. *Id.*

¶14     We address Byrd's claims under the first line of cases—inadequate plea colloquy—in this section and his claims under the second line of cases—extrinsic factors including ineffective assistance of counsel—in the next section.

¶15     In his motion, Byrd alleged that the plea colloquy was inadequate because the trial court failed to establish that Byrd understood the nature of the crime and the constitutional rights he was waiving.  The transcript of the court's comprehensive and thorough plea colloquy conclusively refutes this allegation.

¶16     On appeal, Byrd argues that the plea colloquy was inadequate because the trial court noted that the plea questionnaire that Byrd signed indicated that Byrd was "receiving some treatment and ha[s] had medications within the last 24 hours," but the court did not inquire as to nature of or purpose for the treatment.  The plea questionnaire specified that Byrd was "currently receiving treatment for a mental illness or disorder."  The following exchange continued in response to the trial court's noting the treatment and medications:

> The Court:  Are the medications [pre]scribed by a doctor?
>
> The Defendant:  Yes.
>
> The Court:  Are you taking them the way the doctor has prescribed?
>
> The Defendant:  Yes.
>
> The Court: Okay.  Do those in any way interfere with your understanding of what we are doing here today in court, your ability to think clearly about all of these very important decisions, and your ability to confer and counsel with your attorneys?
>
> The Defendant:  No.

This exchange refutes Byrd's argument that the trial court had reason to inquire as to the details of Byrd's treatment beyond that it was for mental illness and he was

under a doctor's care. Byrd does not point to any part of the colloquy when Byrd, by his conduct or responses, indicated that his illness or medications affected his understanding of and ability to process the proceedings and consult with counsel. To the contrary, the transcript of the plea hearing reflects that Byrd responded appropriately to the trial court's inquiries and did not exhibit behavior suggesting that he was disoriented or confused. Byrd also fails to cite any legal authority supporting the proposition that a plea colloquy must address the details of a defendant's treatment and medications when the defendant does not indicate that the treatment or medications interfere with the defendant's understanding and ability. Moreover, Byrd failed to raise this particular issue in his initial postconviction motion. For all these reasons, this argument fails.

## C. Ineffective Assistance of Counsel

¶17    "[T]he 'manifest injustice' test is [also] met if the defendant was denied the effective assistance of counsel." *Bentley*, 201 Wis. 2d at 311. To prove ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient and that the deficient performance was prejudicial." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93 (citing *Strickland*, 466 U.S. at 687). "[T]here is no reason for a court deciding an ineffective assistance claim … to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. 668, 697; *see also Breitzman*, 378 Wis. 2d 431, ¶37 ("If the defendant fails to satisfy either prong [under *Strickland*], we need not consider the other."). The defendant bears the burden on both of these prongs. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111.

¶18    Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305.  Professionally competent assistance encompasses a "wide range" of conduct, and a reviewing court starts with the presumption that counsel's assistance fell within that wide range.  *Strickland*, 466 U.S. at 689.  "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.*

¶19    To demonstrate prejudice, a defendant seeking plea withdrawal must show "that there is a reasonable probability that, but for [] counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Bentley*, 201 Wis. 2d at 312 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

¶20    "Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact."  *State v. Maday*, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611.  The circuit court's findings of fact will not be disturbed unless those findings are clearly erroneous.  *Id.*  "'[T]he circumstances of the case and … counsel's conduct and strategy' are considered findings of fact." *Id.* (quoted source omitted).  Whether those facts constitute deficient performance and whether such deficient performance was prejudicial are questions of law that we review independently.  *See State v. Tulley*, 2001 WI App 236, ¶5, 248 Wis. 2d 505, 635 N.W.2d 807.

¶21    In his initial motion Byrd alleged that counsel was ineffective in several respects.  We address each allegation in turn.

11

¶22    Byrd alleged, and he argues on appeal, that counsel failed to object to the State's breach of the plea agreement.  We have explained above why he has failed to show any breach; therefore, counsel could not be ineffective for not raising a nonmeritorious objection.  *See* *State v. Reynolds*, 206 Wis. 2d 356, 369, 557 N.W.2d 821 (Ct. App. 1996) (it is not deficient performance to fail to make an objection that would have been unsuccessful).

¶23    Byrd also alleged, and he reiterates on appeal, that counsel failed to explain the elements of the charge to which he was pleading, to explain possible defenses to the charge such as heat of passion, and to explain that the facts alleged did not meet the elements because there was no intent to kill A.B. and his self-defense belief was reasonable. These first two allegations (failure to explain elements and defenses) are conclusively refuted by the transcript of the colloquy, during which Byrd and counsel confirmed that counsel had explained the elements, which were also attached to the plea questionnaire and stated by the trial court, that Byrd understood the elements and had no questions about them, and that counsel had explained possible defenses.  As to the third allegation (facts do not meet elements), the court established during the colloquy that the criminal complaint and preliminary hearing transcript supplied the factual basis for the plea.  Byrd does not explain how the allegations in the criminal complaint fail to support the elements of intent and unreasonable belief.  His conclusory allegation as to his subjective feelings about his conduct is insufficient.

¶24    Byrd further alleged, and he reiterates on appeal, that counsel coerced him to plead despite his lack of intent and reasonable self-defense belief, and that counsel took advantage of his being heavily medicated and mentally ill, which interfered with his abilities to understand the proceedings.  The plea colloquy belies these conclusory allegations.  Byrd told the trial court that his counsel had

represented him competently, had answered all of his questions, had reviewed his case thoroughly, and had looked for possible defenses. Byrd told the court that he was satisfied with counsel's services and did not believe them to be lacking in any way. Byrd told the court that his medication did not interfere with his understanding or abilities. Byrd also admitted that he was guilty of the charge. Byrd points to no other parts of the record that support his allegations to the contrary.[7]

¶25     Relatedly, Byrd alleged that counsel failed to investigate his competency in light of his "obvious mental health issues" and his being "impaired in such a way that could not contribute to his defense." *See State v. Garfoot*, 207 Wis. 2d 214, 222, 558 N.W.2d 626 (1997) (A person is competent to proceed if the person possesses both "sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding, and ... a rational as well as factual understanding of a proceeding against him or her."). In his motion Byrd cited a psychiatric report completed upon his entering the prison system after he was sentenced, which noted that he was on medication for mood stability and had a history of bipolar disorder/organic mood disorder and substance use disorders. However, Byrd does not explain what his issues and impairments were or how they prevented him from understanding and consulting with counsel at the time of the

---

[7] In his reply brief, Byrd appears to argue that he was coerced into pleading because his view of the facts establishes that he is not guilty of second-degree intentional homicide. However, to the extent that Byrd argues that his plea was involuntary because it was coerced, this argument comes too late to be considered. *See Smith v. State*, 60 Wis. 2d 373, 380, 210 N.W.2d 678 (1973) ("a coerced plea … lacks the voluntariness essential to the validity of a plea"); *Bilda v. County of Milwaukee*, 2006 WI App 57, ¶20 n.7, 292 Wis. 2d 212, 713 N.W.2d 661 ("It is a well-established rule that we do not consider arguments raised for the first time in a reply brief."). This argument also reflects Byrd's subjective view of the facts, which disregards the trial court's finding during the plea colloquy that the facts in the criminal complaint do support the charge to which he pleaded. Being confronted with those facts does not present a situation that is unlawfully coercive. *See State v. Goyette*, 2006 WI App 178, ¶26, 296 Wis. 2d 359, 722 N.W.2d 731 ("If a lawyer's advice to a client that a plea offer represents a good deal amounts to coercion, then few guilty pleas could stand.").

plea proceedings. A history of mental illness does not necessarily render the person incompetent to proceed. *State v. Byrge*, 2000 WI 101, ¶31, 237 Wis. 2d 197, 614 N.W.2d 477. Byrd's conclusory allegations do not suffice to show ineffective assistance of counsel.

¶26     On appeal, Byrd expands on the issue of competency and argues that the trial court erred in not holding a competency hearing, that counsel failed to move for a competency hearing, and that he was unlawfully convicted and sentenced while incompetent. *Id.*, ¶31 (competency to proceed is "a judicial inquiry, not a medical determination"). He bases these new assertions on the report of a psychological evaluation that was conducted the day before the plea hearing. Byrd references the parts of the report that assessed his behavior at the time of the crime and concluded that his intoxication was a substantial factor in the outcome of the incident; concluded that he met the criteria for diagnoses of bipolar, substance abuse, and personality disorder; and opined that he was malingering during the evaluation. Byrd offers no expert support for his assertions about his competency at the time of the plea proceeding. Moreover, as the State notes, Byrd did not raise any of these competency-related assertions (other than ineffective assistance of counsel, which we addressed above) in his initial motion. Accordingly, we do not consider them further.

¶27     On appeal, Byrd also argues that counsel failed to move to suppress the statements he made to law enforcement during the interviews that he requested when he was in jail. However, he did not make this allegation in his initial motion, and he fails on appeal to show that counsel failed to file a meritorious motion on this issue.

14

¶28    Also on appeal, Byrd asserts that counsel improperly told Byrd that he would be found guilty of first-degree intentional homicide if he went to trial and that it would be better to plead to second-degree intentional homicide than to second-degree reckless homicide. Byrd also asserts that counsel never discussed any sentencing recommendations with Byrd, and that, at sentencing, counsel improperly recommended more time than the Presentence Investigation Report recommended (as to extended supervision) and more time than the penalties for second-degree reckless homicide. Finally, Byrd asserts that counsel pursued the case "without any feedback from [] Byrd." Byrd did not make any of these assertions in his initial motion; nor does he cite any factual support in the record to entitle him to a hearing on these conclusory assertions.

¶29    In sum, Byrd fails to show that his initial postconviction motion sufficed to entitle him to relief.

## II. Byrd's "Amended Supplemental" Motion for Postconviction Relief

¶30    As stated, the circuit court denied Byrd's "amended supplemental" motion as procedurally barred and as an "improper" motion for reconsideration. We conclude that the court properly denied the motion because it did not meet the standard for reconsideration.

¶31    We review a circuit court's decision on a motion for reconsideration for an erroneous exercise of discretion. *Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." *Id.*, ¶44.

¶32    In his "amended supplemental" motion, Byrd alleged that his inculpatory statements to law enforcement were improperly introduced into evidence because they were "coerced" without counsel present. However, Byrd waived this claim when he pleaded guilty without first filing a motion to suppress his inculpatory statements. *See* WIS. STAT. § 971.31(10); ***State v. Hampton***, 2010 WI App 169, ¶23, 330 Wis. 2d 531, 793 N.W.2d 901 (stating that § 971.31(10) provides a narrow exception to the rule that a guilty plea waives all nonjurisdictional defects and defenses by allowing appellate review of the denial of a motion to suppress). Accordingly, he could only raise this issue through a claim of ineffective assistance of counsel, and he did not make that claim on this basis in his initial motion. Nor does Byrd explain how the facts pertinent to such a claim would have been newly discovered. Consequently, this claim fails to meet the standard for reconsideration.

¶33    Byrd also alleged that counsel rendered ineffective assistance in four respects. Byrd appeared to allege that counsel failed to object to the State's allegedly false and unsupported remarks at sentencing, including remarks that referenced allegedly "perjured testimony" and statements by Byrd's ex-wife. However, Byrd did not make this claim on this basis in his initial motion. Nor does Byrd explain how the facts pertinent to such a claim would have been newly discovered.

¶34    Byrd alleged that counsel coerced him to plead to a charge when the facts did not meet the statutory elements because he had no intent. However, he failed to present either newly discovered evidence or establish a manifest error of law or fact as to the circuit court's rejection of this same allegation in his initial motion for postconviction relief.

¶35     Byrd alleged that counsel "confused" him by equating "self-defense" with "imperfect self-defense" and by advising him that if he went to trial he would be convicted of first-degree intentional homicide when the prosecutor "had every intention of pursuing the case as second-degree intentional homicide." These allegations are conclusory and, to the extent that they overlap with allegations that Byrd made in his initial motion for postconviction relief, he failed to present either newly discovered evidence or establish a manifest error of law or fact as to the circuit court's rejection of such allegations.

¶36     Byrd alleged that counsel failed to inform the trial court of Byrd's psychological evaluation the day before the plea hearing and that, according to Byrd, the doctor's conclusion that Byrd was mentally ill showed that Byrd did not understand the legal proceedings and was not competent to plead. The evaluation Byrd refers to took place over two days, the day before the plea hearing and about three weeks after the plea hearing. The doctor completed the report of the evaluation after the plea hearing and counsel filed the report before sentencing. Byrd does not explain how this report constitutes evidence that he did not discover before he filed his initial motion for postconviction relief.

¶37     Moreover, Byrd does not point to any language in the report that addresses his competency at the time of the evaluation and plea hearing, or language that would support an allegation that his treatment and medication affected his competency to plead. Rather, the report states that: "the evaluation centered on gathering information about Mr. Byrd's background, lifestyle, psychological condition and what role those components play in his life in an effort to offer a framework within which to understand his behavior around the time of [A.B.'s] death." The report also states that, during the evaluation, Byrd was oriented and able to respond to questions appropriately and concisely; "his thought process was

17

without psychotic components"; his intellectual level "appeared to be average or above"; and his "[i]nsight and judgment appeared to be very good." The doctor administered two psychological tests, and opined that Byrd, in answering the tests' questions, "made an effort to greatly exaggerate the presentation of his level of his disturbance" and showed "a desire to appear more disturbed than he may actually be." Byrd fails to show that the report's conclusions and opinions constituted newly discovered evidence relevant to his competency at the time of the plea hearing.[8]

## CONCLUSION

¶38     For the reasons stated, we affirm the circuit court's denial of Byrd's initial and "amended supplemental" motions for postconviction relief.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] The same reasoning defeats Byrd's use of the psychological evaluation report to support his allegation that the trial court proceeded without jurisdiction because his competency was in question and no competency evaluation was performed.