**2024 WI App 4**

# COURT OF APPEALS OF WISCONSIN
# PUBLISHED OPINION

Case No.:        2023AP458-CR

Complete Title of Case:


**STATE OF WISCONSIN,**

        **PLAINTIFF-RESPONDENT,**

    **V.**

**DUSTIN J. VANDERGALIEN,**

        **DEFENDANT-APPELLANT.**


| | |
|---|---|
| Opinion Filed: | December 29, 2023 |
| Submitted on Briefs: | October 19, 2023 |

| | |
|---|---|
| JUDGES: | Kloppenburg, P.J., Nashold, and Taylor, JJ. |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark D. Richards* and *Natalie L. Wisco* of *Richards & Associates, S.C.*, Racine. |
| Respondent ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Lisa E.F. Kumfer*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

**COURT OF APPEALS
DECISION
DATED AND FILED**

**December 29, 2023**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.     2023AP458-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2020CF146

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

  V.

DUSTIN J. VANDERGALIEN,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Dodge County:  MARTIN J. DeVRIES, Judge.  *Affirmed*.

Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

¶1     KLOPPENBURG, P.J.   Dustin VanderGalien pleaded no contest to three counts:  (1) homicide by operation of a motor vehicle while having a detectable amount of a restricted controlled substance in his blood as a second or

subsequent offense; (2) causing great bodily harm by operation of a motor vehicle while having a detectable amount of a restricted controlled substance in his blood; and (3) causing injury by operation of a motor vehicle while having a detectable amount of a restricted controlled substance in his blood as a second or subsequent offense. The restricted controlled substance at issue in all three counts is a metabolite of cocaine. The circuit court imposed a sentence totaling 21 years and six months of initial confinement and 18 years of extended supervision.

¶2    On appeal, VanderGalien challenges the constitutionality of WIS. STAT. § 340.01(50m)(c) (2021-22), insofar as it includes "[c]ocaine or any of its metabolites" in the definition of a restricted controlled substance for purposes of prosecution under the Wisconsin motor vehicle code (WIS. STAT. § 23.33 and chs. 340-349 and 351), on the ground that this statutory provision lacks a rational basis.[1]  Specifically, VanderGalien argues that there is no rational basis for

---

[1] At the outset, we clarify the scope of VanderGalien's constitutional challenge. As stated in detail below, VanderGalien was charged with and pleaded no contest to offenses involving the operation of a motor vehicle with a detectable amount of a restricted controlled substance in his blood, under both the Wisconsin motor vehicle code and the criminal code. *See, e.g.*, WIS. STAT. § 346.63(2)(a)3 (prohibiting causing injury by operation of a motor vehicle with a detectable amount of a restricted controlled substance in the blood, in the motor vehicle code); WIS. STAT. § 940.09(1)(am) (imposing criminal penalties for homicide by operation of a motor vehicle with a detectable amount of a restricted controlled substance in the blood, in the criminal code); WIS. STAT. § 940.025(1)(am) (imposing criminal penalties for causing great bodily harm by operation of a motor vehicle with a detectable amount of a restricted controlled substance in the blood, in the criminal code). The definition of a restricted controlled substance in WIS. STAT. § 340.01(50m)(c) applies to the charges under the motor vehicle code; the definition of a restricted controlled substance in WIS. STAT. § 939.22(33) applies to the charges under the criminal code. The two definitions are identical, but throughout his briefing VanderGalien frames his argument as challenging only the inclusion of inactive, non-impairing metabolites of cocaine in the definition of a restricted controlled substance under § 340.01(50m)(c), as that definition applies to what he terms "all operation of a motor vehicle with a detectable amount of restricted controlled substance offenses" in the motor vehicle code. VanderGalien does not cite or otherwise refer to the identical definition in § 939.22(33).  Accordingly, we confine our analysis to the definition in § 340.01(50m)(c) as it applies to the charges under the motor vehicle code, and we do not address § 939.22(33) as it applies to the charges under the criminal code.

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

including inactive, non-impairing metabolites of cocaine in the definition of a restricted controlled substance. VanderGalien also appeals the circuit court's order denying without a hearing his motion for postconviction relief, which asserted that: (1) his due process rights were violated because of a prosecutorial conflict of interest; and (2) he is entitled to withdraw his pleas because (a) trial counsel rendered constitutionally ineffective assistance by not explaining the effect of dismissed and read-in charges and (b) as a result of counsel's failure, VanderGalien did not understand their effect and so did not knowingly, intelligently, and voluntarily enter his pleas.

¶3    We conclude that the inclusion of metabolites of cocaine in the definition in WIS. STAT. § 340.01(50m)(c) of a "restricted controlled substance" for purposes of prosecution under the Wisconsin motor vehicle code is constitutional. We further conclude that VanderGalien is not entitled to an evidentiary hearing on the claims raised in his motion for postconviction relief. Accordingly, we affirm.

## BACKGROUND

¶4    The criminal complaint alleged as follows. At approximately 6:30 p.m. on July 30, 2019, VanderGalien was driving east in the westbound lane of County Road B in the Town of Burnett in Dodge County and struck head-on two motor vehicles driving west in the westbound lane of the road. The three occupants in the first motor vehicle that VanderGalien struck suffered minor injuries. Three of the four occupants in the second motor vehicle that VanderGalien struck suffered serious injuries and the fourth occupant died. After first responders removed VanderGalien from his motor vehicle, he was placed under arrest. Because of his severe injuries, he was then transported by helicopter to a hospital. VanderGalien's blood was drawn pursuant to a search warrant nearly four hours after the collisions.

The results of the testing of VanderGalien's blood showed 240 ng/mL of the cocaine metabolite benzoylecgonine ("BE").

¶5 In the criminal complaint, the State charged VanderGalien with numerous offenses related to the July 2019 collisions. VanderGalien filed a motion to dismiss seven of the counts, all of which alleged that VanderGalien was operating a motor vehicle with a detectable amount of a restricted controlled substance in his blood. VanderGalien argued that WIS. STAT. § 340.01(50m)(c), the statute defining a restricted controlled substance as "[c]ocaine or any of its metabolites," which includes BE, for purposes of prosecution under the Wisconsin motor vehicle code, is unconstitutional because all of the metabolites of cocaine are "inactive" and have no "impairing effect." Accordingly, VanderGalien argued, there is no rational relationship between prohibiting having a detectable amount of an inactive and non-impairing metabolite of cocaine, such as BE, in the blood while operating a motor vehicle and any legitimate public interest in roadway safety.[2]

¶6 The circuit court denied the motion, based on VanderGalien's expert's testimony that cocaine metabolizes in the bloodstream very quickly and that BE remains in the bloodstream for much longer. Thus, according to the expert, in the case of a driver with cocaine in the driver's system at the time of a collision, cocaine may be "out of the [bloodstream] by the time the [driver's] blood is drawn" but BE will be detectable at the time of the blood draw. The court reasoned that the "legislature has taken a zero tolerance approach" that "eliminates complex methods of proving guilt." The court concluded that that statutory approach, reflected here

---

[2] The State has not, in the circuit court or on appeal, contested that BE is an inactive and non-impairing metabolite of cocaine.

4

by prohibiting having a detectable amount of BE in the blood while operating a motor vehicle, has a rational basis.

¶7     The State filed an amended information charging VanderGalien with more serious offenses following the completion of a report by the Wisconsin State Patrol Technical Reconstruction Unit.  According to the report, the driver of the motor vehicle that VanderGalien passed before continuing east in the westbound lane told officers that she saw VanderGalien driving erratically after he passed her. VanderGalien stayed in the westbound lane of the road and was travelling east at 76-77 miles per hour in a 55-mile-per-hour zone between .1 and 5 seconds before he collided with the left front of the first motor vehicle, which had steered right towards the shoulder to avoid a direct head-on collision.  VanderGalien continued east for 38 feet and struck the second motor vehicle directly head-on.

¶8     In June 2021, the parties reached a plea agreement.  On June 29, 2021, as part of the plea agreement, the State filed an amended information charging thirteen counts.[3]  VanderGalien pleaded no contest to the following counts in the June 29 amended information:  one count of homicide by operation of a motor vehicle with a detectable amount of a restricted controlled substance in the blood as a second or subsequent offense; one count of causing great bodily harm by operation of a motor vehicle while having a detectable amount of a restricted controlled substance in the blood; and one count of causing injury by operation of a motor

_____

[3] The June 29, 2021 amended information charged VanderGalien with one count of homicide by operation of a motor vehicle while having a detectable amount of a restricted controlled substance in his blood; one count of causing great bodily harm by operation of a motor vehicle while having a detectable amount of a restricted controlled substance in his blood; five counts of causing injury by operation of a motor vehicle while having a detectable amount of a restricted controlled substance in his blood; one count of first-degree recklessly causing bodily harm; and five counts of first-degree recklessly endangering safety.

Six of the counts were charged as second or subsequent offenses.

vehicle with a detectable amount of a restricted controlled substance in the blood as a second or subsequent offense. The remaining counts were dismissed and read in. The circuit court imposed consecutive sentences totaling 21 years and 6 months of initial confinement and 18 years of extended supervision.

¶9 VanderGalien filed a motion for postconviction relief arguing that: (1) the circuit court erroneously denied his pretrial motion to dismiss all counts involving the operation of a motor vehicle with a detectable amount of a restricted controlled substance in the blood on the ground that the inclusion of inactive, non-impairing metabolites of cocaine in the definition of a restricted controlled substance in WIS. STAT. § 340.01(50m)(c) is unconstitutional because it lacks a rational basis; (2) "all proceedings" should be invalidated because he was denied his constitutional due process rights when the Dodge County District Attorney's office failed to disclose a disqualifying conflict of interest and did not appoint a special prosecutor; (3) he is entitled to withdraw his no contest pleas because his trial counsel was constitutionally ineffective by failing to properly explain the effect of dismissed and read-in charges; and (4) as a result of trial counsel's failure, VanderGalien did not understand their effect and is, therefore, entitled to withdraw his no contest pleas because they were not knowingly, intelligently, and voluntarily entered. The circuit court denied VanderGalien's motion without holding an evidentiary hearing.

¶10 VanderGalien appeals.

## DISCUSSION

¶11 VanderGalien reasserts on appeal the four issues raised in his motion for postconviction relief. We address each issue in turn.

6

# I. Constitutionality of prohibiting having a detectable amount of a metabolite of cocaine in the blood while driving

¶12     This issue concerns the statutes in the Wisconsin motor vehicle code that describe offenses involving the operation of a motor vehicle with a detectable amount in a person's blood of a restricted controlled substance as defined in WIS. STAT. § 340.01(50m).[4]     That statute defines "restricted controlled substance" for purposes of prosecution under the Wisconsin motor vehicle code to include "[c]ocaine or any of its metabolites."  Sec. 340.01(50m)(c).  VanderGalien argues that the inclusion of inactive, non-impairing metabolites of cocaine in the definition of a restricted controlled substance in § 340.01(50m)(c) for purposes of prosecution under the Wisconsin motor vehicle code is unconstitutional because it lacks a rational basis.

¶13     As a preliminary matter, we first address the parties' disagreement as to whether VanderGalien sufficiently raised and preserved this issue for appeal.  "As a general rule, issues not raised in the circuit court will not be considered for the first time on appeal."  *State v. Dowdy*, 2012 WI 12, ¶5, 338 Wis. 2d 565, 808 N.W.2d 691.  Whether a claim is forfeited or adequately preserved for appeal is a question of law that this court reviews de novo.  *State v. Corey J.G.*, 215 Wis. 2d 395, 405, 572 N.W.2d 845 (1998).  "It is a fundamental principle of appellate review that issues must be preserved at the circuit court.  Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal."  *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727.

---

[4] *See, e.g.*, WIS. STAT. § 346.63(1)(am) (prohibiting operating a motor vehicle with a detectable amount of restricted controlled substance in the blood); § 346.63(2)(a)(3) (prohibiting causing injury by operation of a motor vehicle with a detectable amount of a restricted controlled substance in the blood).

¶14     To determine whether VanderGalien adequately preserved this issue for appeal, we must determine what type of constitutional challenge VanderGalien has raised.  There are two general types of constitutional challenges to statutes: facial and as-applied.  ***Mayo v. Wisconsin Injured Patients and Fams. Comp. Fund***, 2018 WI 78, ¶24, 383 Wis. 2d 1, 914 N.W.2d 678 (citing ***League of Women Voters of Wis. Educ. Network, Inc. v. Walker***, 2014 WI 97, ¶13, 357 Wis. 2d 360, 851 N.W.2d 302).  Our supreme court has explained that a facial constitutional challenge is one in which a party challenges a law "as being unconstitutional on its face.  Under such a challenge, the challenger must show that the law cannot be enforced 'under any circumstances.'" ***Mayo***, 383 Wis. 2d 1, ¶24 (citing ***League of Women Voters***, 357 Wis. 2d 360, ¶13 (quoting ***State v. Wood***, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63)).  The court continued, "In contrast, in an as-applied [constitutional] challenge, we assess the merits of the challenge by considering the facts of the particular case in front of us, 'not hypothetical facts in other situations.'  Under such a challenge, the challenger must show that [the challenger's] constitutional rights were actually violated." ***Mayo***, 383 Wis. 2d 1, ¶24.

¶15     In VanderGalien's motion for postconviction relief, he argued, in part, that the circuit court erred in denying his motion to dismiss the counts involving his operating a motor vehicle with the restricted controlled substance BE in his blood.  Specifically, VanderGalien argued that the inclusion of BE as a metabolite of cocaine in the definition of a restricted controlled substance in WIS. STAT. § 340.01(50m)(c) has no rational relationship to protecting the highways from drugged drivers.  To the extent that VanderGalien raised in his motion and raises on appeal an as-applied challenge to this statute, that challenge was waived by his plea.  "[A] guilty, no contest, or Alford plea 'waives all nonjurisdictional defects,

including constitutional claims,'" other than facial constitutional challenges. ***State v. Jackson***, 2020 WI App 4, ¶¶8-9, 390 Wis. 2d 402, 938 N.W.2d 639 (quoted source omitted).

¶16 We next turn to whether VanderGalien raised a facial challenge to the constitutionality of the statute in the circuit court. In support of his motion to dismiss, VanderGalien argued that including inactive, non-impairing metabolites of cocaine in the definition of a restricted controlled substance under WIS. STAT. § 340.01(50m)(c) is unconstitutional because it irrationally prohibits a non-impairing substance from being detected in a person's blood when that person operates a motor vehicle. VanderGalien clarified that he was "challenging whether an inactive [non-impairing] cocaine metabolite can *alone* form the basis for a violation" and arguing that "criminalizing driving while having a non-impairing metabolite in [a driver's] blood is not reasonably and rationally related to a legitimate public interest" like roadway safety and is, therefore, unconstitutional. At the hearing on the motion, the circuit court summarized the challenge as a "facial challenge [based] on the language of the statute" and VanderGalien's trial counsel agreed, arguing that the statute is "unconstitutional, not only [as applied] to [VanderGalien]" but "facially unconstitutional … as applied to anybody."

¶17 Thus, VanderGalien challenged the constitutionality of WIS. STAT. § 340.01(50m)(c) by effectively arguing that the statute cannot be enforced under any circumstances because there is no impairment with the mere presence of an inactive, non-impairing metabolite of cocaine in one's system. Therefore, we conclude that he did preserve for appeal a facial constitutional challenge, which we now consider.

¶18　　As stated, VanderGalien challenges the constitutionality of WIS. STAT. § 340.01(50m)(c), arguing that the prohibition against having a detectable amount of an inactive, non-impairing metabolite of cocaine in the blood while driving for purposes of prosecution under the Wisconsin motor vehicle code violates substantive due process. The due process clause of the United States Constitution provides: "No state shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Our supreme court has held that the due process clause of the Wisconsin Constitution is substantially equivalent to the Fourteenth Amendment due process clause of the United States Constitution. *State ex rel. Cresci v. Schmidt*, 62 Wis. 2d 400, 414, 215 N.W.2d 361 (1974). "Due process requires that the means chosen by the legislature bear a reasonable and rational relationship to the purpose or object of the enactment; if it does, and the legislative purpose is a proper one, the exercise of the police power is valid." *State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989) (citing *State v. Jackman*, 60 Wis. 2d 700, 705, 211 N.W.2d 480 (1973)).

¶19　　The constitutionality of a statute presents a question of law that we review de novo. *State v. Cole*, 2003 WI 112, ¶10, 264 Wis. 2d 520, 665 N.W.2d 328. When a party challenges a law as being unconstitutional on its face, the party must show that the law cannot be enforced "under any circumstances." *Wood*, 323 Wis. 2d 321, ¶13. "If a challenger succeeds in a facial attack on a law, the law is void 'from its beginning to the end.'" *Wood*, 323 Wis. 2d 321, ¶13 (quoting *State ex rel. Comm'rs of Pub. Lands v. Anderson*, 56 Wis. 2d 666, 672, 203 N.W.2d 84 (1973)).

¶20　　"A facial constitutional challenge to a statute is an uphill endeavor." *State v. Dennis H.*, 2002 WI 104, ¶5, 255 Wis. 2d 359, 647 N.W.2d 851. "The party

challenging a statute must establish its unconstitutionality beyond a reasonable doubt." *Id.*, ¶12. When the constitutionality of a statute is being challenged, "the phrase 'beyond a reasonable doubt' expresses the 'force or conviction with which a court must conclude, as a matter of law, that a statute is unconstitutional before the statute or its application can be set aside.'" *League of Women Voters*, 357 Wis. 2d 360, ¶17 (quoted source omitted). "Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973).

¶21 The parties agree that the challenged statute here does not implicate a fundamental right or suspect class and, therefore, it is subject to rational basis scrutiny. *See State v. Luedtke*, 2015 WI 42, ¶76, 362 Wis. 2d 1, 863 N.W.2d 592 ("We apply rational basis scrutiny to [a] statute [when] the statute does not implicate a fundamental right or suspect class.").

¶22 To repeat, WIS. STAT. § 340.01(50m) defines "restricted controlled substance" for purposes of prosecution under the Wisconsin motor vehicle code to include "[c]ocaine or any of its metabolites." Sec. 340.01(50m)(c). The legislative memo accompanying the enactment of the statute explains that the statute is part of a statutory scheme that intends to "prohibit[] operating a motor vehicle … with a detectable amount of a restricted controlled substance in the bloodstream." Wisconsin Legislative Council Act memo for 2003 Wis. Act 97 (Dec. 16, 2003), https://docs.legis.wisconsin.gov/2003/related/lcactmemo/ab458.pdf. "[T]here is no requirement that the person was 'under the influence' of that restricted controlled substance. Evidence of a detectable amount is sufficient." *Id.* As additional context for the law's enactment, the memo explains that it "is often difficult to prove that a

person who has used a restricted controlled substance was 'under the influence' of that substance." *Id.*

¶23 Thus, WIS. STAT. § 340.01(50m) is part of a statutory scheme that creates a "zero tolerance" approach to driving a motor vehicle after illegally ingesting a restricted controlled substance, without regard to impairment. *State v. Smet*, 2005 WI App 263, ¶¶13, 17, 288 Wis. 2d 525, 709 N.W.2d 474 (stating that the statutory scheme requires "absolute sobriety" in terms of a restricted controlled substance, as it has long prohibited driving with a specified concentration of alcohol in the blood regardless of impairment). As explained in greater detail below, our supreme court has held this "strict liability, zero tolerance approach" to a restricted controlled substance to be constitutional. *Luedtke*, 362 Wis. 2d 1, ¶77.

¶24 According to uncontroverted testimony by VanderGalien's expert, cocaine breaks down, or in other words metabolizes, into metabolites, including BE. BE is an inactive, non-impairing metabolite of cocaine. Depending on an individual's method and amount of ingestion, cocaine can be detected in the blood for about 5 hours to 10 and one-half hours after ingestion, while BE typically remains detectable for up to 48 hours.

¶25 In *Luedtke*, our supreme court explained that "[i]n addressing the problem of drugged driving, the legislature could have reasonably and rationally concluded that proscribed substances range widely in purity and potency and thus may be unpredictable in their duration and effect." *Id.*, 362 Wis. 2d 1, ¶77 (quoted source omitted). Thus, to "make prosecutions easier," and because there is "no 'reliable measure' of impairment" for illicit drugs, "the legislature could have reasonably concluded that the more sensible approach was to ban drivers from having any amount in their systems." *Id.*, ¶¶69, 77 (quoting *Smet*, 288 Wis. 2d 525,

¶17). Accordingly, the court determined that the legislature "rationally conclude[d] that a strict liability, zero-tolerance approach is the best way to combat drugged driving." *Luedtke*, 362 Wis. 2d 1, ¶77.

¶26 VanderGalien does not argue generally that there is no rational basis for the statutory "strict liability, zero tolerance approach" that the *Luedtke* court concluded is constitutional. *See id.*, ¶77. Rather, he argues that the cases upholding the constitutionality of the zero tolerance approach do not address the situations in which, as here, the only substance found in the blood is an inactive and non-impairing metabolite. *See Smet*, 288 Wis. 2d 525, ¶2 (defendant's blood had measurable concentration of delta-9-tetrahydrocannabinol, the primary active ingredient in marijuana, as well as two metabolites of tetrahydrocannabinol); *Luedtke*, 362 Wis. 2d 1, ¶13 (defendant's blood test indicated detectable amounts of cocaine and BE). He further argues that there is no rational basis for imposing strict liability based on the presence of an inactive, non-impairing metabolite in the blood under WIS. STAT. § 340.01(50m)(c), because prohibiting having an inactive, non-impairing metabolite in the blood while operating a motor vehicle lacks a rational connection to roadway safety. Specifically, he argues that, due to the spread between the time it takes for cocaine to metabolize (and no longer be present in the blood) and the amount of time that the inactive, non-impairing metabolite BE remains in the blood, the presence of that metabolite in the blood does not always indicate that an individual was impaired by cocaine at the time that the individual was driving. That is, an individual could ingest cocaine hours before driving such that cocaine was no longer in the individual's blood at the time the individual was driving but an inactive, non-impairing metabolite such as BE was in the individual's blood, yet the individual was not impaired by cocaine when driving.

¶27 VanderGalien is essentially arguing that there will be more instances of "false positives"—cases in which there was no cocaine in an individual's blood when the individual was driving but an inactive, non-impairing metabolite such as BE was still detectable at the time the blood was drawn—than "true positives"—cases in which there was cocaine in an individual's blood when the individual was driving but, due to a delay, by the time the blood was drawn all that remained detectable was BE. However, whether or not there will be more situations in which an individual has a detectable amount of an inactive, non-impairing metabolite such as BE but was not impaired as compared to situations in which the individual was impaired is not the test we apply to determine whether a statute is facially constitutional. The question is whether prohibiting having an inactive, non-impairing metabolite such as BE in the blood while operating a motor vehicle bears a reasonable and rational relationship to the legislative purpose of promoting roadway safety and preventing drugged driving. *See **Smet***, 288 Wis. 2d 525, ¶7 ("When the exercise of the police power is challenged on due process grounds, the test is whether the means chosen have a reasonable and rational relationship to the purpose or object of the enactment.").

¶28 VanderGalien's argument itself implies that there will be "true positives," thereby positing the circumstances that exemplify why it was rational for the legislature to include "[c]ocaine or any of its metabolites," which includes inactive, non-impairing metabolites such as BE, in the definition of a restricted controlled substance. Indeed, as VanderGalien's own expert testified, an individual may ingest cocaine and, up to nine hours later, while the cocaine is still detectable in the individual's blood, operate a motor vehicle. The individual could then be stopped and arrested and have blood drawn one or two hours after the individual had been driving. At that point, the cocaine will likely no longer be detectable and

only BE will be detectable. In such a case, BE accurately indicates that the individual had a detectable amount of cocaine in the individual's blood at the time of driving. Moreover, in cases when, as here, a collision occurs involving several motor vehicles and numerous individuals who require immediate medical attention, including the driver and the victims, it may be several hours before the driver's blood can be drawn. If an inactive, non-impairing metabolite such as BE was not included as a restricted controlled substance, the State may be unable to prosecute drugged drivers in such cases even though the driver had an impairing substance, cocaine, in the blood while driving.

¶29    VanderGalien fails to show that the legislature could not have reasonably determined that the inclusion of inactive, non-impairing metabolites such as BE in the definition of a restricted controlled substance is a reasonable means of combatting drugged driving. Thus, he fails to show that the statute containing that definition lacks the rational basis articulated in *Luedtke* for the zero tolerance approach that the court in that case deemed constitutional. *See Luedtke*, 362 Wis. 2d 1, ¶77. In other words, VanderGalien fails to meet his heavy burden to overcome the presumption of constitutionality. *See Hammermill Paper Co.*, 58 Wis. 2d at 46.

¶30    In sum, we conclude that the inclusion of "[c]ocaine or any of its metabolites" in the definition of a restricted controlled substance for purposes of prosecution under the Wisconsin motor vehicle code bears a rational relationship to

the purpose or objective of the statutory scheme. Accordingly, VanderGalien's facial challenge to the statute's constitutionality fails.[5]

## II. Entitlement to an evidentiary hearing on remaining claims for postconviction relief

¶31     VanderGalien argues that the circuit court erred in denying without an evidentiary hearing the remaining claims in his motion for postconviction relief. We first summarize the standard of review and legal principles that apply to the issue of whether a motion for postconviction relief entitles a defendant to an evidentiary hearing. We then explain why we reject VanderGalien's argument as to each of his claims in turn.

¶32     The standard of review of a circuit court's decision denying a motion for postconviction relief without a hearing is well established. A postconviction motion must allege sufficient material facts that, if true, would entitle the defendant to relief. *State v. Ruffin*, 2022 WI 34, ¶27, 401 Wis. 2d 619, 974 N.W.2d 432. A motion does not entitle a defendant to relief if it contains "only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Id.*, ¶28. Whether a motion suffices to entitle a defendant to relief is a question of law that this court reviews de novo. *State v. Sulla*, 2016 WI 46, ¶23, 369 Wis. 2d 225, 880 N.W.2d 659; *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶33     If the motion suffices to entitle the defendant to relief, then the circuit court is required to grant a hearing on the motion. *State v. Jackson*, 2023 WI 3, ¶8,

---

[5] VanderGalien also asserts that the substances listed in WIS. STAT. § 340.01(50m) other than metabolites of cocaine are all impairing substances. However, VanderGalien does not satisfactorily explain why that means that the inclusion of non-impairing metabolites of cocaine such as BE lacks a rational basis. For this reason, and the reasons stated above, this argument fails.

405 Wis. 2d 458, 983 N.W.2d 608. If the motion does not suffice to entitle the defendant to relief, then it is within the court's discretion as to whether to hold a hearing. *Id.*; *Allen*, 274 Wis. 2d 568, ¶9.

## A. Invalidation of proceedings based on alleged prosecutorial conflict of interest

¶34    VanderGalien argues that he made a sufficient factual showing of a prosecutorial conflict of interest to entitle him to an evidentiary hearing on his claim that "all proceedings" should be invalidated because of the resulting violation of his due process rights.

*Additional Background*

¶35    After VanderGalien and the State reached a plea agreement but prior to sentencing, VanderGalien and his trial counsel became aware that a legal assistant in the office of the district attorney prosecuting the case had a close personal relationship with the deceased victim. More specifically, the legal assistant's daughter had previously dated the deceased victim, and the legal assistant's family and the victim had all spent time together over the course of the daughter and the victim's relationship, as the legal assistant explained in a victim impact statement letter submitted to the circuit court prior to sentencing. The legal assistant's daughter also submitted a letter to the court prior to sentencing that referenced their past relationship.

¶36    In his sentencing memorandum, VanderGalien argued that the relationship between the legal assistant and the deceased victim raised an inference that the district attorney was biased against VanderGalien. Based on this, VanderGalien asked that the circuit court take the district attorney's alleged bias into consideration and review the district attorney's sentencing recommendations

17

accordingly. In his motion for postconviction relief, VanderGalien argued that the district attorney's alleged bias created a conflict of interest that required that "all proceedings prior to discovery of the conflict [] be invalidated."

*Analysis*

¶37 On appeal, VanderGalien renews his argument that due to the alleged prosecutorial conflict of interest, VanderGalien's right to due process was violated and "all proceedings prior to the discovery of the conflict should be nullified." VanderGalien cites **State v. Smith** as support for his assertion that "[a] prosecutor's conflict of interest in a criminal matter can create prejudice necessitating invalidation of the entire proceedings." *See* **State v. Smith**, 198 Wis. 2d 584, 591, 543 N.W.2d 512 (Wis. App. 1995). We understand VanderGalien to be arguing that, because of the alleged conflict of interest, this entire criminal proceeding must begin anew.

¶38 VanderGalien's claim does not entitle him to relief because VanderGalien did not timely move to invalidate the proceedings based on the district attorney's alleged conflict of interest. Thus, VanderGalien forfeited any claim that the alleged conflict of interest amounted to a due process violation warranting invalidation of all proceedings prior to the discovery of the conflict.

¶39 A defendant's rights may be forfeited "by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." **United States v. Olano**, 507 U.S. 725, 731 (1993) (quoting **Yakus v. United States**, 321 U.S. 414, 444, 64 S. Ct. 660 (1944)). "To preserve an alleged error for review, 'trial counsel or the party must object in a timely fashion with specificity to allow the court and counsel to review the objection and correct any potential error.'" **State v. Torkelson**, 2007 WI App 272, ¶25, 306 Wis. 2d 673, 743 N.W.2d 511 (quoted

18

source omitted). Forfeiture "prevents attorneys from 'sandbagging' opposing counsel by failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal." *State v. Pinno*, 2014 WI 74, ¶56, 356 Wis. 2d 106, 850 N.W.2d 207.

¶40 Despite being made aware of the relationship between the legal assistant and the deceased victim one week prior to sentencing, VanderGalien did not move to invalidate the proceedings before sentencing based on the alleged conflict of interest or ask that the district attorney be taken off the case and a special prosecutor be appointed. Rather, VanderGalien raised the alleged conflict of interest in his sentencing memorandum for the purpose of arguing that, in light of the district attorney's alleged bias, the circuit court should consider the alleged bias "when assessing the reasonableness of" the district attorney's sentencing recommendations. VanderGalien did not seek to invalidate the proceedings based on the alleged conflict of interest until after he was sentenced, in his motion for postconviction relief, thereby depriving the district attorney and the circuit court of the opportunity to timely address his claim. By failing to timely seek invalidation of the criminal proceeding based on the alleged conflict of interest, VanderGalien forfeited this claim.

¶41 VanderGalien's claim also does not entitle him to relief under the "normal procedure in criminal cases" for addressing forfeiture, which is "within the rubric of the ineffective assistance of counsel." *See State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). That is, although VanderGalien did not allege that his trial counsel was constitutionally ineffective by failing to move to invalidate the proceedings prior to sentencing based on the alleged conflict of interest, the record conclusively shows that trial counsel was not ineffective for failing to do so.

¶42     A defendant claiming ineffective assistance of counsel must establish both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). If a defendant fails to satisfy one prong, we need not consider the other. ***Id.*** at 697. We conclude that the record conclusively shows that trial counsel did not perform deficiently.

¶43     Counsel's performance is "constitutionally deficient if it falls below an objective standard of reasonableness." ***State v. Thiel***, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. "We are 'highly deferential' to counsel's decisions, provided they are objectively reasonable and strategic." ***State v. Mull***, 2023 WI 26, ¶35, 406 Wis. 2d 491, 987 N.W.2d 707 (quoting ***Breitzman***, 378 Wis. 2d 431, ¶65). "[W]e examine trial counsel's choices 'in the context of the circumstances as they existed at the time [counsel] made [counsel's] decisions.'" ***Mull***, 406 Wis. 2d 491, ¶36 (quoting ***State v. Pico***, 2018 WI 66, ¶22, 382 Wis. 2d 273, 924 N.W.2d 95).

¶44     "Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact." ***State v. Maday***, 2017 WI 28, ¶25, 374 Wis. 2d 164, 892 N.W.2d 611. The circuit court's findings of fact will not be disturbed unless those findings are clearly erroneous. ***Id.*** "'The circumstances of the case and … counsel's conduct and strategy' are considered findings of fact." ***Id.*** (quoted source omitted). However, whether those facts constitute deficient performance and whether such deficient performance was prejudicial are questions of law that we review independently. ***State v. Tulley***, 2001 WI App 236, ¶5, 248 Wis. 2d 505, 635 N.W.2d 807.

¶45 Here, the record conclusively shows that VanderGalien's trial counsel made a reasonable strategic decision by emphasizing the alleged conflict of interest within the context of sentencing in order to seek leniency, rather than seeking to invalidate the criminal proceeding, thereby requiring that the State start anew by filing a new criminal complaint. Given the undisputed factual basis for the charges—that VanderGalien was speeding in the wrong lane for over 1600 feet before colliding head-on with two motor vehicles, leaving several victims injured and one deceased, and that he had a restricted controlled substance in his blood—it was objectively reasonable for trial counsel to determine that it was in VanderGalien's best interest to preserve the plea agreement, which reduced VanderGalien's total sentence exposure from 190 years to 58 years and six months (with the State agreeing to cap its sentencing recommendation to 28 years of initial confinement) and use the alleged conflict of interest to argue for leniency at sentencing.

¶46 Separately, VanderGalien argues that the district attorney should have disclosed the conflict, removed himself from the case, and requested a special prosecutor. However, VanderGalien does not cite any case law that supports his assertion that the district attorney was required to request that a special prosecutor be appointed by the circuit court, or which provides standards for such a requirement. Rather, VanderGalien cites the Wisconsin statute regarding special prosecutors, which provides that a "judge may appoint an attorney as a special prosecutor only if the judge or the requesting district attorney submits an affidavit to the department of administration attesting that … [t]he district attorney determines that a conflict of interest exists regarding the district attorney or the district attorney staff." WIS. STAT. § 978.045(1r)(bm), (1r)(bm)8. VanderGalien does not fully explain or cite authority to support his assertion that the statute

mandates that the district attorney request a special prosecutor as opposed to simply providing instances in which a judge may elect to appoint a special prosecutor. Accordingly, we do not consider this argument further. *See Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (stating that we may not consider arguments unsupported by legal authority).

¶47    In sum, VanderGalien fails to show that he was entitled to an evidentiary hearing on the alleged conflict of interest issue.

## B.  Plea withdrawal based on counsel's failure to explain and VanderGalien's failure to understand effect of dismissed and read-in charges

¶48    VanderGalien argues that he made a sufficient showing to be entitled to an evidentiary hearing on his plea withdrawal claim because:  (1) trial counsel provided constitutionally ineffective assistance by inadequately explaining the effect of the dismissed and read-in charges; and (2) as a result of counsel's failure, VanderGalien did not understand their effect and, therefore, did not enter his pleas knowingly, intelligently, and voluntarily.  As we explain, VanderGalien's plea withdrawal claim fails because he does not allege sufficient facts showing that he was prejudiced by any error by trial counsel, and the record conclusively shows that he did knowingly, intelligently, and voluntarily enter his pleas.

¶49    A post-sentencing motion for plea withdrawal must establish that plea withdrawal is necessary to correct a manifest injustice.  *State v. Bentley*, 201 Wis. 2d 303, 311, 548 N.W.2d 50 (1996).  "[T]he 'manifest injustice' test is met if the defendant was denied the effective assistance of counsel." *Id.*  The test is also met if the plea was not knowing, intelligent, and voluntary.  *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906; *see also State v. Burton*, 2013 WI

61, ¶73, 349 Wis. 2d 1, 832 N.W.2d 611 ("Waiving constitutional rights must be knowing, intelligent, and voluntary acts 'done with sufficient awareness of the relevant circumstances and likely consequences.'" (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970))).

¶50     VanderGalien's plea withdrawal claims concern the effect of the dismissed and read-in charges.  "Read-in charge" means "any crime that is uncharged or that is dismissed as part of a plea agreement."  *See State v. Straszkowski*, 2008 WI 65, ¶¶81-86, 310 Wis. 2d 259, 750 N.W.2d 835; *see also* WIS. STAT. § 973.20(1g) (providing the stated definition of "read-in charges" for purposes of restitution).  With regard to the effect of dismissed and read-in charges at sentencing, "Wisconsin has a strong public policy that the sentencing court be provided with all relevant information" which "allows the sentencing court to consider a broad range of factors when determining a sentence." *State v. Guzman*, 166 Wis. 2d 577, 592, 480 N.W.2d 446 (1992).  When imposing a sentence, the "sentencing court may consider uncharged and unproven offenses" as well as the "'facts related to offenses for which the defendant has been acquitted'" but "the maximum penalty of the charged offense will not be increased." *State v. Frey*, 2012 WI 99, ¶47, 343 Wis. 2d 358, 817 N.W.2d 436 (quoting *State v. Leitner*, 2002 WI 77, ¶45, 253 Wis. 2d 449, 646 N.W.2d 341); *Straszkowski*, 310 Wis. 2d 259, ¶93.

### 1.  Ineffective assistance of counsel

¶51     We have summarized the standard of review and applicable legal principles governing a claim of ineffective assistance of counsel in ¶¶42-44 above. In short, a defendant claiming ineffective assistance of counsel must establish both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  We resolve this claim based

on the prejudice prong. To prove prejudice, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Pertinent here, a defendant seeking to withdraw a plea based on ineffective assistance of counsel must show "that there is a reasonable probability that, but for the counsel's errors" the defendant would not have reached a plea agreement and instead "would have insisted on going to trial." *Bentley*, 201 Wis. 2d at 312.

¶52 VanderGalien supported his motion for postconviction relief with an affidavit by postconviction counsel in which counsel averred that trial counsel "does not believe he correctly explained the meaning and effect of dismissed [and] read-in charges at sentencing to VanderGalien before a plea was entered." However, VanderGalien did not submit an affidavit averring that counsel failed to explain the effect of these charges and that he did not understand their effect. Even if we accept VanderGalien's assertion that counsel did not adequately explain the effect of the dismissed and read-in charges, his claim fails because he does not allege sufficient facts to show prejudice.

¶53 VanderGalien provides no explanation as to why, had trial counsel explained the effect of the dismissed and read-in charges at sentencing, VanderGalien would have "elected to proceed to trial." Without more than a conclusory assertion by VanderGalien's postconviction counsel that VanderGalien would have opted to proceed to trial, VanderGalien fails to show a reasonable probability that his course of action would have changed. Absent a plea deal, VanderGalien was facing thirteen counts and a total sentence exposure of 190 years of imprisonment on a straightforward set of facts regarding the collisions between VanderGalien, who had a restricted controlled substance in his blood, and two other motor vehicles resulting in severe injuries and one fatality. VanderGalien has not

sufficiently demonstrated that he would have elected to proceed to trial because trial counsel did not explain the effect of the dismissed and read-in charges. "[A] defendant must do more than merely allege that he would have pled differently" in order to establish prejudice. *Id.* at 313. In sum, VanderGalien has not established sufficient facts to entitle him to relief on this ineffective assistance of counsel claim.

¶54 VanderGalien argues that he did establish the need for an evidentiary hearing on this issue. Specifically, VanderGalien notes that, at the sentencing hearing, the parties argued over the law regarding the effect of dismissed and read-in charges and the circuit court did not at that time resolve their dispute. Based on this interaction, VanderGalien argues, the postconviction court could not determine whether VanderGalien's trial counsel correctly explained to VanderGalien the effect of the read-in charges, thereby necessitating an evidentiary hearing on the issue. We disagree.

¶55 The transcript of the sentencing hearing shows that the prosecutor erroneously characterized the effect of the dismissed and read-in charges as admissions of guilt on those offenses, and that VanderGalien's trial counsel correctly refuted the prosecutor's mistaken understanding. This interaction fails to support the inference that trial counsel failed to explain to VanderGalien the effect of the dismissed and read-in charges before VanderGalien entered his pleas. Indeed, this interaction at sentencing, in which trial counsel correctly stated the effect of these charges, supports the contrary inference, that trial counsel correctly stated the effect of the charges to VanderGalien before he entered his pleas. More generally, VanderGalien does not explain how the State's misstatement of the effect of the dismissed and read-in charges at sentencing establishes that his trial counsel did not explain the effect of the dismissed and read-in charges to him before he entered his

25

pleas. In sum, VanderGalien fails to show that this interaction entitles him to a hearing on this ineffective assistance of counsel claim.

### 2. Knowing, intelligent, and voluntary pleas

¶56 If a guilty plea is not entered knowingly, intelligently, and voluntarily, the defendant is entitled to withdrawal of the plea "as a matter of right because such a plea 'violates fundamental due process.'" *State v. Finley*, 2016 WI 63, ¶13, 370 Wis. 2d 402, 882 N.W.2d 761 (quoting *Brown*, 293 Wis. 2d 594, ¶19).

¶57 The record conclusively refutes VanderGalien's claim that he did not knowingly, intelligently, and voluntarily enter his pleas because, as a result of trial counsel's failure to explain the effect of the dismissed and read-in charges, he did not understand their effect. Specifically, the record demonstrates that the plea questionnaire and the circuit court correctly explained the effect of the read-in charges to VanderGalien, and that he acknowledged as much.

¶58 The plea questionnaire, signed by both VanderGalien and trial counsel, correctly states that: (1) the read-in charges may be considered by the circuit court at sentencing "when imposing sentence, [but] the maximum penalty will not be increased"; (2) VanderGalien "may be required to pay restitution on any read-in charges"; and (3) "the State may not prosecute [VanderGalien] for any read-in charges." At the plea hearing, VanderGalien confirmed that he had reviewed the plea questionnaire with trial counsel prior to signing it and that he understood its contents.

¶59 Also at the plea hearing, the circuit court explained the read-in charges using language that mirrors the plea questionnaire. Specifically, the court explained that the provision that the charges that would be dismissed and read-in "means that

26

the court may consider these charges when imposing sentence and you may be required to pay restitution on each of these read-in charges; however, the maximum penalties will not be increased and the state will be prohibited from any future prosecution of these read-in charges[.]" The court then asked VanderGalien, "[D]o you understand that?" to which VanderGalien replied, "Yes, Your Honor." VanderGalien did not submit any affidavit or other evidence presenting facts showing that he did not understand.

¶60    In sum, the record conclusively shows that VanderGalien is not entitled to relief on his claim that he did not enter his pleas knowingly, intelligently, and voluntarily because he did not understand the effect of the dismissed and read-in charges.

**CONCLUSION**

¶61    For the reasons stated, we conclude that the inclusion of metabolites of cocaine in the definition in WIS. STAT. § 340.01(50m)(c) of a "restricted controlled substance" for purposes of prosecution under the Wisconsin motor vehicle code is constitutional. We also conclude that VanderGalien is not entitled to an evidentiary hearing on the remaining claims in his motion for postconviction relief. Accordingly, we affirm.

*By the Court.*—Judgment and order affirmed.